**Tim A. BLANCHARD, Appellant,**

v.

**Edward J. DERWINSKI, Secretary of Veterans Affairs, Appellee.**

**No. 90–1133.**

United States Court of Veterans Appeals.

Decided Sept. 30, 1992.

As Amended Oct. 6, 1992.

Tim A. Blanchard, pro se.

James A. Endicott, Jr., Gen. Counsel, David T. Landers, Acting Asst. Gen. Counsel, Andrew J. Mullen, Deputy Asst. Gen. Counsel, and Michael P. Butler, were on the pleadings, for appellee.

Before NEBEKER, Chief Judge, and FARLEY and MANKIN, Associate Judges. NEBEKER, Chief Judge, and FARLEY, Associate Judge, concurring in the result, file separate opinions.

MANKIN, Associate Judge:

Tim A. Blanchard appeals from a July 10, 1990, Board of Veterans' Appeals (BVA or Board) decision that denied entitlement to service connection for a lower back disorder. The veteran's claim for service connection for his back disability was previous-

ly denied in a BVA decision issued in May 1987. R. at 185–89. In the decision under appeal, the Board determined that the evidence the veteran had submitted after the 1987 decision did not provide a new factual basis for establishing the claim. The Court has jurisdiction of the case pursuant to 38 U.S.C. § 7252(a) (formerly § 4052(a)). The Secretary of Veterans Affairs (Secretary) has filed a motion for summary affirmance.

In accordance with our decision in *Manio v. Derwinski*, 1 Vet.App. 140 (1991), we review the newly-submitted evidence to determine whether it was "new and material" evidence that would require the Board to reopen the claim. We find that appellant submitted evidence that, while "new," was not "material" to the issue of whether appellant's back disability was incurred in or aggravated by service. Therefore, we will grant the Secretary's motion and affirm the BVA decision.

## I.

Appellant served in the Air Force from November 1971 to November 1975 and from October 1981 to April 1982. In December 1974 he was involved in a car accident in which the car he was driving was struck broadside. R. at 17, 29. Following the accident, he briefly lost consciousness, R. at 143, and was hospitalized for observation. An examination revealed spinal defects that were thought to be congenital, including spina bifida occulta [congenital cleft of spinal column]. R. at 27. He was discharged with a diagnosis of "head trauma without sequellae [sic] [and] cervical spine abnormalities." R. at 28. Despite these findings, in 1975 his discharge physical reported "spine, other musculoskeletal" as "normal." R. at 37.

When appellant reenlisted in 1981 he was assigned to missile duty, but he began experiencing severe headaches that led to his hospitalization and eventual disqualification from the missile assignment. R. at 45, 48. In December 1981 an Air Force physician found that he had a severe vertebral deformity, with Klippel–Feil abnormality (congenital fusion of cervical vertebrae resulting in a short, immobile neck). R. at 45. The diagnosis also included right occipital neuralgia (acute pain radiating along the course of nerve or nerves in back of the skull). R. at 45, 55. He was also examined by a private physician, Dr. Gjerdrum, who noted that "X-rays ... show a fusion of the C2–3 cervical vertebrae with a [Klippel–Feil] abnormality.... If symptoms persist he should have a CT [computerized tomography] scan to delineate the exact location of the lesion." R. at 105. Following a March 1982 hearing before an Air Force Physical Evaluation Board, appellant was discharged from service. Apparently, subsequent to his discharge, he was awarded service connection for his Klippel–Feil syndrome with right occipital neuralgia and headaches and assigned a 20% disability rating. Supplemental Record (SR.) at 2.

Upon return to civilian life, appellant began working as a letter carrier. In August 1983 he experienced severe lower back pain after lifting a heavy package at work. R. at 117. The lumbar pain did not promptly resolve itself, but persisted along with headaches and neck pain that failed to respond to medication. R. at 120–21, 123, 125, 130–31. In January 1984 Dr. Korsower, a private physician, described appellant's condition as "acute lumbosacral sprain/strain." R. at 138. Appellant's back pain flared up again in September 1985 after he tried to start a lawn mower, and such episodes continued to occur. R. at 134, 137. In October 1985 he underwent back surgery at a Veterans' Administration (now the Department of Veterans Affairs) (VA) hospital. R. at 176. During surgery a nerve root was inadvertently pulled. R. at 176. Appellant's back pain persisted following the surgery. R. at 173.

Although not documented in the record, in 1986 appellant apparently submitted claims for service connection for a lumbosacral spine disorder and for an increased rating for his service-connected Klippel–Feil abnormality. He contended that his back disability was the result of his 1974 car accident. SR. at 5. In September 1986 the BVA denied an increased rating for Klippel–Feil, but remanded the back disorder claim for further development, order-

ing the Regional Office (RO) to search for all medical records pertinent to the claim. SR. at 5–6. The RO apparently obtained some additional records but continued to deny the claim. SR. at 8, 11. On return of the case to the BVA, appellant, contending that he had experienced chronic back pain since service, offered several alternative theories in support of a claim for service connection for his back disorder: that it was the direct result of the 1974 car accident, that the accident aggravated his existing spina bifida occulta, or that it was related to his service-connected Klippel–Feil. R. at 186. The BVA denied appellant's back disability claim in May 1987. R. at 188–89.

Appellant underwent back surgery again in June 1987. Dr. Korsower's surgery report noted apparent damage to a nerve root stemming from the 1985 surgery. R. at 190–91. Appellant's pain continued, and he underwent CT scans in March 1988 and March 1989. R. at 202–03.

In September 1988 appellant attempted to reopen his claim. R. at 209. He submitted excerpts of transcripts of his 1982 physical evaluation board hearing, R. at 213–19, along with records of his more recent treatment. He also submitted sworn statements from his wife and from the wife of a deceased Air Force colleague who testified that appellant had experienced back problems ever since the 1974 car accident. R. at 240–43. He further contended that the back surgery performed by VA personnel in 1985 aggravated his disability. R. at 233.

In a March 1991 decision, the BVA concluded that the evidence submitted since its 1987 decision

> does not establish that the veteran developed acquired low back disc disease or other disability during service. Accordingly, the evidence received since the prior denial does not provide a new factual basis for establishing entitlement to service connection for a back disability.

*Tim A. Blanchard*, BVA 90–___, at 4 (July 10, 1990).

## II.

Once a claim has been disallowed by the Board, the claim may not thereafter be reopened and allowed unless new and material evidence is presented or secured with respect to the disallowed claim. 38 U.S.C. §§ 5108, 7104(b) (formerly §§ 3008, 4004(b)). *See Manio v. Derwinski*, 1 Vet. App. 140 (1991). "The question of whether newly submitted evidence is 'new and material' under section [5108] is a question of law." *Jones v. Derwinski*, 1 Vet.App. 210 (1991) (citing *Colvin v. Derwinski*, 1 Vet. App. 171 (1991)).

> New evidence is not that which is merely cumulative of other evidence on the record. Material evidence is relevant and probative of the issue at hand. However, not every piece of new evidence, even if relevant and probative, will justify a reopening because some evidence is of limited weight and thus is insufficient to justify a new hearing. The "bright line" rule in other federal courts is that to justify a reopening on the basis of new and material evidence, there must be a reasonable possibility that the new evidence, when viewed in the context of all the evidence, both new and old, would change the outcome.

*Colvin*, 1 Vet.App. at 174 (citations omitted).

Applying the above standards, currently the law of this Court, we find that appellant has submitted "new" evidence. The testimony from his 1982 physical evaluation board hearing is new, as it is not merely cumulative of evidence previously considered. The same may be said concerning appellant's records of his recent medical treatment, as well as the two lay statements supporting appellant's contention that he had experienced back problems ever since the 1974 car accident.

We find, however, that as a matter of law, the new evidence is not material to appellant's claim for a service-connected back disorder. Although there is some evidence suggesting that the veteran was injured during his 1985 surgery at a VA hospital, there is no evidence connecting such injury to any of his current symp-

toms. Further, while it seems entirely possible that the veteran's 1974 car accident resulted in a then-undetected injury that is causally related to his current back problems, the new evidence does not include any evidence in the form of medical opinion that would support such a conclusion. New evidence that supports no more than a conjecture-based claim offers no reasonable possibility of changing the outcome. It does not constitute material evidence satisfying the requirement of 38 U.S.C. § 5108. Consequently, the Board's previous denial of appellant's claim remained final, and the claim could not be reopened and allowed on the basis of the recently submitted evidence.

In passing, we note that if appellant is able to support his contention that his current back symptomatology is the result of his 1985 surgery, he may reopen his claim for a service-connected disability by submitting new and material evidence on that issue. *See* 38 U.S.C. § 1151 (formerly § 351); *Gardner v. Derwinski*, 1 Vet.App. 584 (1991).

The July 10, 1990, decision of the Board of Veterans' Appeals is AFFIRMED.

NEBEKER, Chief Judge, concurring:

I concur in the judgment affirming the Board's decision. I also agree with Judge Farley's views respecting our *Colvin* holding that a reasonable possibility of success on reopening is a prerequisite to the reopening event. Any new and material evidence should be viewed as true for the limited purposes of reopening a final decision. It should be weighed for its persuasiveness or credibility after the finality veil is lifted—not before. However, I am bound to follow *Colvin* until and if the en banc court overrules it.

FARLEY, Associate Judge, concurring:

I concur in the result reached by the majority. I write separately, however, because eighteen months of experience with *Colvin V. Derwinski*, 1 Vet.App. 171 (1991), has led at least this judge to conclude that there is in the *Colvin* opinion a legal and a practical error which should be eliminated rather than perpetuated. I am referring to the Court's adoption of what must be the dimmest "bright line" rule in veterans' jurisprudence and perhaps all of administrative law: the "reasonable possibility that the new evidence, when viewed in the context of all the evidence, both old and new, would change the outcome" standard which is applied by the majority in this appeal, as it has been by the Court in many, many appeals since the *Colvin* opinion was issued. *Colvin*, 1 Vet.App. at 174.

Under 38 U.S.C. § 7104(b) (formerly § 4004(b)), a final decision by the BVA on a given claim "may not thereafter be reopened and allowed and a claim based upon the same factual basis may not be considered." The exception to this rule is 38 U.S.C. § 5108 (formerly § 3008) which states that "[i]f new and material evidence is presented or secured with respect to a claim which has been disallowed, the Secretary shall reopen the claim and review the former disposition of the claim." For ease of reference, the portion of the *Colvin* opinion which undertook to define the statutory phrase "new and material evidence," and with which I disagree, will be repeated here:

> The "bright line" rule in other federal courts is that to justify a reopening on the basis of new and material evidence, there must be a reasonable possibility that the new evidence, when viewed in the context of all the evidence, both new and old, would change the outcome. *See Chisholm v. Secretary of Health and Human Services*, 717 F.Supp. 366, 367 (W.D.Penn.1989).

We note that the Secretary of Veterans Affairs has recently promulgated a definition of "new and material":

> *New and material evidence* means evidence not previously submitted to agency decisionmakers which bears directly and substantially upon the specific matter under consideration, which is neither cumulative nor redundant, and which by itself or in connection with evidence previously assembled is so significant that it must be consid-

ered in order to fairly decide the merits of the claim.

55 Fed.Reg. 52,273 (1990) (to be codified at 38 C.F.R. § 3.156(a) effective Jan. 22, 1991). We do not find this definition of "new and material" to be inconsistent with the standard set out in *Chisholm* that we adopt here. The "reasonable possibility" standard is clearer and more easily applied.

*Colvin*, 1 Vet.App. at 174.

In my view, the legal flaw inherent in the Court's adoption of the "reasonable possibility" standard was the unwarranted and unauthorized substitution by the Court of its judgment for that of the Secretary. "As [the Supreme] Court has often recognized, the construction of a statute by those charged with its administration is entitled to substantial deference." *United States v. Rutherford*, 442 U.S. 544, 553, 99 S.Ct. 2470, 2475, 61 L.Ed.2d 68 (1979).

> "An agency's expertise is superior to that of a court when a dispute centers on whether a particular regulation is "reasonably necessary to effectuate any of the provisions or to accomplish any of the purposes" of the Act the agency is charged with enforcing; the agency's position, in such circumstances, is therefore due substantial deference."

*Commodity Futures Trading Commission v. Schor*, 478 U.S. 833, 845, 106 S.Ct. 3245, 3253, 92 L.Ed.2d 675 (1986). "If the agency regulation is not in conflict with the plain language of the statute, a reviewing court must give deference to the agency's interpretation of the statute." *K Mart Corp. v. Cartier, Inc.*, 486 U.S. 281, 292, 108 S.Ct. 1811, 1818, 100 L.Ed.2d 313 (1988).

As the *Colvin* opinion was compelled to note, the Secretary had recently promulgated a regulatory definition for the statutory term "new and material evidence." *See* 38 C.F.R. § 3.156(a). Instead of according the requisite "substantial deference" to the Secretary's definition, however, the *Colvin* panel found the Secretary's definition "not ... inconsistent" with the "reasonable possibility" standard it chose to adopt. Research has failed to uncover a single case

in which a "not inconsistent" test was determinative of the validity of an agency's interpretation of a statute which it was charged to administer.

If, as the *Colvin* opinion panel seems to suggest by the "not inconsistent" language, the "reasonable possibility" of changing the outcome standard is the same as that promulgated by the Secretary in 38 C.F.R. § 3.156(a), there was no need for the Court to create confusion by adding unnecessary gloss to the Secretary's definition. On the other hand, if the two definitions are not the same, as other language in the *Colvin* opinion would appear to indicate ("The 'reasonable possibility' standard is clearer and more easily applied"; *Colvin*, 1 Vet.App. at 174), absent a finding that the Secretary's regulatory definition was in conflict with the plain meaning of the statute, the *Colvin* panel was required to uphold the Secretary's definition rather than impose one which the panel intuited was "clearer and more easily applied". *Id.*

I respectfully submit that the *Colvin* panel erred by not according even a modicum of deference to the Secretary's definition and rushing pell-mell to adopt its preferred "bright line" rule gleaned from a single, obscure opinion by a federal trial court.

The Court's "reasonable possibility" test also is defective from a practical perspective because it presents VA adjudicators not with a standard to apply but with an enigma to ponder. Adjudicators must prematurely adjudicate the claim using the evidence proffered by the claimant as new and material before they can decide whether that same evidence is sufficiently new and material to warrant reopening the claim which they would have to adjudicate. Merely restating the test demonstrates its absurdity. From the claimant's perspective, the Court's standard requires that the claimant prove that he or she will prevail with the new evidence before the claim can be reopened. In contrast, under the Secretary's definition of "new and material," all that a veteran need show in order to have a claim reopened and readjudicated is that the proffered evidence "by itself or in con-

nection with evidence previously assembled is *so significant that it must be considered in order to fairly decide the merits of the claim.*"  38 C.F.R. § 3.156(a) (emphasis added).

Contrary to the conjecture of the *Colvin* panel, I believe that the "bright line reasonable possibility" test is unilluminating, unclear, and difficult to apply and I suspect that I am not alone.  I also believe that the Court exceeded its authority and mandate when it adopted its own "reasonable possibility" standard and failed to accord due deference to the Secretary's definition of the statutory term.  The solution is for the Court to overturn that portion of the otherwise superb *Colvin* opinion and uphold 38 C.F.R. § 3.156(a).

This discourse, however, will be of no comfort or benefit to appellant herein because the evidence submitted since the May 1987 final denial by the BVA fails to meet even the Secretary's standard under 38 C.F.R. § 3.156(a).  For this reason, I concur in the result reached here by the majority.