**Wilbur B. STEPHENS, Appellant,**

v.

**Anthony J. PRINCIPI, Acting Secretary of Veterans Affairs, Appellee.**

**No. 91–87.**

United States Court of Veterans Appeals.

Dec. 3, 1992.

James W. Stanley, Jr., North Little Rock, AR, was on the brief for appellant.

James A. Endicott, Gen. Counsel, David T. Landers, Acting Asst. Gen. Counsel, Andrew J. Mullen, Deputy Asst. Gen. Counsel, and Michael P. Butler, Washington, DC, were on the pleadings for appellee.

Before FARLEY, IVERS and STEINBERG, Associate Judges.

IVERS, Associate Judge, filed the opinion of the Court. FARLEY, Associate Judge, filed a concurring opinion. STEINBERG, Associate Judge, also filed a concurring opinion.

IVERS, Associate Judge:

Wilbur B. Stephens appeals from a December 7, 1990, Board of Veterans' Appeals (BVA or Board) decision which denied his claim for service connection for chronic skin disability, including psoriasis, and for arthritis, including psoriatic arthritis. The Court has jurisdiction of the case under 38 U.S.C. § 7252(a) (formerly § 4052(a)). The Court holds that the Board's determination that the evidence most recently submitted by the veteran was not "new and material" was correct. 38 U.S.C. § 5108 (formerly § 3008). However, because the Board did not provide adequate reasons or bases regarding the issue of error in previous adjudications of this claim, we vacate the BVA decision and remand the case for readjudication consistent with this opinion.

## I. FACTS

The veteran served in the United States Navy from June 1942 to April 1946 and from September 1950 to November 1950. *Wilbur B. Stephens*, BVA 90–46095, at 4 (Dec. 7, 1990); R. at 5, 63. In January 1946, Mr. Stephens broke his right wrist. R. at 3, 7, 55. On February 5, 1946, Mr. Stephens reported to sick bay complaining of a cough, an itchy rash on his chest and abdomen, and dizziness. R. at 26. The doctor commented that no Koplik spots were noted; Koplik spots are "small bluish white dots surrounded by a reddish zone that appear on the mucous membrane of the cheeks and lips before the appearance of the skin eruption in a case of measles." WEBSTER'S MEDICAL DESK DICTIONARY 368 (1986). The doctor also noted: "Suggestion of blanching rash on abdomen[; o]therwise negative." R. at 26. Mr. Stephens was found fit for duty two days later. R. at 26. His separation examination report dated April 17, 1946, provides no evidence of a skin condition but it does note "[f]requent pains and stiffness in r[igh]t wrist." R. at 1–2, 28–29.

The veteran was service connected for traumatic arthritis of the right wrist at 10% from April 19, 1946. R. at 72. A report of physical examination, date-stamped received by the Veterans' Administration (now Department of Veterans Affairs) (VA) Regional Office (RO) on June 24, 1948, reveals that the veteran was suffering from "[e]czematous lesions of both external ears" and that they were "scaly with red irritated area deep." R. at 8.

The veteran was treated in a VA hospital in 1964 and 1966 for pruritus ani. R. at 70. Pruritus is "localized or generalized itching due to irritation of sensory nerve endings from organic or psychogenic causes"; pruritus ani is "pruritus of the anal region." WEBSTER'S MEDICAL DESK DICTIONARY 583.

The hospital summary of record from 1966 states, inter alia, the following:

> Examination at time of admission was not remarkable except for edematous and lichenified areas around the perianal and scrotal regions. He was admitted to the dermatology service with diagnosis of neurodermatitis involving the perianal and scrotal areas.... The pruritus ani was treated with steroid cream with fairly good results.

R. at 70. Upon examination by the VA in November 1967, the examiner reported that "[h]e has no evidence of any disease of the skin and its appendages. His skin is dry, warm, clear and intact." R. at 74. The examiner also noted that "[e]ar canals are dry, clear and free. The ear drums are intact and are of good color and luster and anatomical landmarks." *Id.*

The veteran made his first claim for service connection of a skin disorder in 1978 when he requested that the VA amend his claim, which was apparently for an increase in the disability rating for his service-connected arthritis of the right wrist, "to include an additional disability for a skin disease." R. at 82. On a VA Form 10–10m, Medical Certificate and History, dated January 17, 1978, a doctor wrote, "Several y[ea]r [history] psoriasis, seen in past by Dr. Tansen and other pri[vate] dermatologists. Wants more cream for areas—now uses Synalen on ear. Extensive patches knees, elbows, pre-sacral area, thighs, of excoriation and silver scales." R. at 76. An RO rating board issued a rating decision dated April 24, 1978, denying service connection for a skin condition and stating that

> [t]he service records show a normal enlistment examination and a normal discharge examination. On [February 5, 1946], the veteran had a rash on his stomach which was treated. There is no further mention of a skin problem in the service. Outpatient reports from [January 1, 1978], to [March 13, 1978], show treatment for a skin problem diagnosed as psoriasis.

R. at 84.

The veteran filed a Notice of Disagreement (NOD) with the rating decision on April 30, 1979. R. at 85. In support of his claim, Mr. Stephens submitted a letter from Dr. Charles Davis, a private dermatologist, who stated, inter alia, that

> [i]t is important that many years ago he describes scaliness limited to the ears and scalp, which, at that time, was thought to be seborrhea, but in retrospect probably represents early stages of psoriasis. Frequently, when psoriasis begins it can present a scaliness and flakiness of the scalp and ears and can run a rather intermittent course for years before the more typical lesions of psoriasis develop on the body. This, apparently, is Mr. Stephens['] case, as now he has extensive psoriasis and has continued to have problems with scalp involvement.

R. at 88.

In May 1979, the veteran underwent a VA physical examination in which the examining physician, Dr. Lynn Thompson, reported, inter alia, as follows:

> The patient states that his skin pathology began in 1943 and the start of the condition was in the external ear canal and in the ear lobe itself. The dermatitis then extended to his arms, back, buttocks and his lower extremities and has developed into a generalized psoriasis. Associated with the increase of the psoriasis the veteran has developed arthritic type pains in the shoulders, neck, and in the back which has gradually gotten worse.... *This examiner has reviewed the records in the C–Folder and there is evidence that he was treated for some form of dermatitis of the ears while on active duty.*

R. at 91, 94 (emphasis added). In addition, the examiner noted the following:

> [T]his examiner is inclined to believe that *the psoriasis of this veteran had its inception as a dermatitis of the ears* which gradually extended into a generalized manifestion [sic]. The prominence of psoriasis arthritis is known to exist in approximately 35% of all patient's [sic] having this dermatological manifestation and it would be reasonable to assume

that there is a probable relationship between the dermatological condition and the generalized arthritis. R. at 93 (emphasis added). A VA dermatologist confirmed the diagnosis of psoriasis and noted that "[t]he patient has had this problem since 1948, and he has not been doctoring it very well." R. at 98.

In a rating decision dated June 14, 1979, the RO confirmed and continued the denial of service connection for a skin condition, now referred to as psoriasis. R. at 100. The veteran filed an NOD on July 23, 1979. R. at 101–04. Subsequently, in August 1979, an RO hearing was held where the veteran testified, inter alia, that his first bout with a skin ailment occurred during active duty in Panama in 1943, that he was hospitalized for a couple of days with a rash on his stomach in 1946, and that he was later continuously treated for his gradually worsening skin condition by both VA and private physicians. R. at 105–13. At the hearing, a member of the rating board noted that among the evidence before the VA was a letter from a physician dated July 16, 1947, which showed that the veteran had "external otitis." R. at 107. Otitis externa is "inflammation of the external ear." WEBSTER'S MEDICAL DESK DICTIONARY 503.

On August 16, 1979, the RO issued a rating decision denying the veteran's claims which were designated on the rating sheet as follows: "S[ervice connection] for ear condition, [service connection] for skin condition secondary to [service-connected] arthritis; increased evaluation for [service-connected] arthritis; total rating due to individual unemployability." R. at 116. A Statement of the Case (SOC) dated August 24, 1979, was subsequently issued. R. at 118–22. On VA Form 1–9, the veteran noted under an item he numbered "3" that "[s]ervice connection on ear condition should be awarded basis [sic] of records in C–folder and by the determination of medical exam by VA on [May 16, 1979]." He also noted that "[p]soriasis skin condition is a result of item # 3." R. at 125.

On June 12, 1980, the BVA denied the veteran's claims for service connection for skin disease (claimed as skin and ear conditions); for an increased rating for traumatic arthritis of the right wrist, currently evaluated at 10%; and for entitlement to a total rating based on individual unemployability due to service-connected disability. R. at 135–41. The Board found, inter alia, as follows:

1. The skin rash on the chest and abdomen noted during February 1946 was acute and transitory in nature, with no residuals noted thereafter.

2. Additional skin disability has not been shown to have been present during or at the time of discharge from the periods of active service.

3. The current skin disability (reported as psoriasis) has not been shown to have been attributable to military service.

R. at 140.

In July 1980, the veteran requested that his "claim be reopened and he be considered for service connection for skin condition (psoriasis) and any related arthritic precess [sic] related to psoriasis." R. at 147. The veteran provided evidence in support of his claim, including the following: (1) a letter dated June 30, 1980, from Dr. McCracken stating that the veteran had been treated in his office in 1948 by Dr. Champion for infections in both ears and a ruptured left eardrum (R. at 144); (2) the medical records of Dr. Champion to the same effect (R. at 145, 150); (3) a June 30, 1980, letter from a person who stated that he had known the veteran since February 1947 and that at that time he "was experiencing ear problems and has continued to have these problems up to the present time" (R. at 153); (4) a letter from Dr. Jansen stating that he had followed the veteran first at a VA hospital and then in private practice and that he had seen him in the early to mid-fifties with a diagnosis of neurodermatitis involving the scrotum and ears and more recently with a diagnosis of psoriasis vulgaris with progressive arthritic changes, and that in his opinion "his total dermatologic disease spectrum has been that of psoriasis dating back to the early sixties at least" (R. at 155); (5) another

letter from Dr. McCracken dated August 4, 1980, stating that "Mr. Stephens has had psoriasis for years dating back to military tour of duty in the Panama Canal Zone 1942–46," that "[o]ver the years the disease has progressively advanced," and that he "was treated by Dr. Champion, deceased, from 1948–51 at Champion–McCracken clinic for infection of his ears and skin rashes [which] were later diagnosed as psoriasis" (R. at 156); and (6) a letter from the veteran. R. at 158–64. On August 12, 1980, the RO issued a rating decision declining to reopen the veteran's claim for service connection for a skin condition with arthritis, stating that the evidence submitted was cumulative and repetitious. R. at 165.

On January 6, 1981, a hearing was held at the RO (R. at 174–86) where the veteran testified, inter alia, that his skin condition was incurred in service and that evidence in his "C[-]folder very plainly shows that I was treated for it while on active duty." R. at 174. The veteran's attorney emphasized the notation of Dr. Thompson, the VA doctor who examined the veteran in May 1979, that "there is evidence [in the C–folder] that he was treated for some form of dermatitis of the ears while on active duty" and who stated that "this examiner is inclined to believe that the psoriasis of this veteran had its inception as a dermatitis of the ears which gradually extended into a generalized manifestion [sic]." R. at 174–75. The Chairman of the RO rating board noted that the VA acknowledged "that [the veteran] had treatment for a skin condition in service" but that *"it was not the [r]ating [b]oard's opinion* that the skin condition he had in service was, in fact, psoriasis, and the [BVA] felt the same way, and they said that psoriasis was not diagnosed until 1970." R. at 179 (emphasis added). Another member of the rating board commented that "the diagnosis of psoriasis [was not made] in service" and that "the law requires medical evidence of the existence of the condition during military service." R. at 186. In addition, this member noted that the skin condition in service *"was a condition other than psoriasis or they would have made a diagnosis of psoriasis." Id.* (emphasis added).

The veteran reiterated that dermatologists had opined that his present skin condition had begun with a dermatitis of the ears, and he noted that "I don't have any reason to argue with medical doctors myself.... I could not question them." R. at 186. The VA doctor who served on the rating board made a comment that was only partially recorded in the transcript: "Nine out of ten doctors, who are not dermatologists, if you have a discharge from the ear [inaudible]." R. at 186. On February 11, 1981, the rating board denied the veteran's claim for service connection for a skin condition. R. at 187.

On December 29, 1981, the BVA affirmed the denial of service connection for a skin disease, claimed as psoriasis, with psoriatic arthritis. R. at 199–202. In so doing, the Board found that

> [i]n the absence of any ... signs or manifestations of a dermatological ailment [other than an acute episode of a rash in February 1946] recorded coincident with either period of service or at a time more proximate thereto, a satisfactory basis does not exist to conclude that the present skin disorder began in service or is even related to the dermatological problems reported at this time to have been treated as early as 1948.

R. at 202.

On August 5, 1982, the veteran wrote to the VA, noting that his appeal for service connection had been denied and that the VA's "assistance is the last source of income possible to me unless the VA reconsiders my claim of service connection." R. at 212. The veteran also submitted VA Form 21–6897, Statement of Income and Net Worth—Disability, on which he requested the VA's "aid [and] assistance." R. at 211. The veteran reported for a VA physical examination, and the examining physician was Dr. Lynn Thompson, the same VA physician who had examined the veteran in May 1979 and had written, "[T]his examiner is inclined to believe that the psoriasis of this veteran had its inception as a dermatitis of the ears which gradually extended into a generalized manifestion [sic]." R. at 93, 215. In the examina-

tion report dated October 10, 1982, Dr. Thompson noted the following: "Without commenting [on] the medical-legal aspects of this case as to whether or not it relates to military duties[,] I will stand by the original diagnosis that I gave this veteran in 1979 which was psoriatic arthritis." R. at 216. Dr. Renie E. Bressinck, a VA dermatologist who also examined the veteran in October 1982, noted:

> The patient has been seen in the past by a number of physicians including Dr. Charles Davis from Pine Bluff, Arkansas. *It is his opinion that this patient's psoriasis began as the dermatitis around the ears[;] then progressed. I agree with this opinion.*

R. at 217 (emphasis added).

On November 17, 1982, the RO denied the veteran's claim for an increased evaluation of service-connected arthritis of the right wrist; for non-service-connected pension; and for special monthly pension. R. at 223–24. The veteran was notified of this decision by letter dated December 3, 1982 (R. at 225), and he submitted a VA Form 21–4138, Statement in Support of Claim, dated January 11, 1983, in which he stated that "[i]n regard to your decision of Dec[ember] 3, 1982, I desire a personal appearance at which time I hope to have a witness and submit new evidence." R. at 226.

A hearing was held at the RO on February 10, 1983 (R. at 228–43), and the veteran's attorney, while acknowledging that "the primary issue [at the hearing was a claim] for aid and attendance," requested an opportunity to express the opinion that Mr. Stephens' psoriasis was service connected. R. at 228. The veteran and his attorney again expressed confusion regarding the repeated denial of service connection for the veteran's skin disorder when there was evidence in his file of treatment for a skin disorder while on active duty and doctors had opined that the psoriasis he currently suffered from began with, developed from, or was related to, the skin condition for which he was treated in service. R. at 228–43. One of the members of the rating board explained that "[the only] evi-

dence that we have on him ... [is that] he was treated for a skin condition or a dermatitis. For all we know, *we have assumed that it was resolved with treatment.* I believe there is only one or two instances of that being recorded, when he was on active duty." R. at 231 (emphasis added). The veteran's attorney pointed out that when the veteran had first applied for service connection for residuals of his fractured right wrist in the 1940s, his claim had been denied and he was told that there was no evidence in his service medical records (SMRs) of the fractured wrist. At that time, the veteran got in touch with the Navy doctor who treated his wrist in service, and, on the basis of that doctor's letter or report, he was granted service connection for the fractured wrist. The veteran's attorney commented that, given that a fractured wrist was not recorded in his SMRs, it would not be unlikely that reports of treatment in service for dermatitis were also not included in the record. R. at 229, 231.

Also at the February 1983 hearing, the veteran's attorney addressed the medical doctor who served on the VA rating board, noting the opinions of Drs. Thompson, Davis, and Bressinck that the dermatitis of the ears that the veteran was treated for in service and the psoriasis from which he currently suffered were the same ailment, and stating as follows:

> Dr. Walker, you probably were around then[.] I wasn't. I have a feeling that in the war zone or the Panama Canal [Z]one in 1946, ... psoriasis was not a commonly used term. Dermatitis o[r] fungus or some other such [name] might have been.

R. at 230. The doctor acknowledged that, although there was psoriasis in those years, "[i]n the earlier stages, it was not diagnosed as psoriasis." R. at 230. The doctor added that "[i]f he was seen by a physician in the [C]anal [Z]one, and a rash, regardless of an allergy, fungus, or a scratch type of dermatitis, or whatever, it was just diagnosed as dermatitis. No specific diagnosis was made." R. at 230–31. The veteran then recalled that at the RO hearing in January 1981, the doctor who

served on the rating board had stated that *"in [nine] out of [ten] cases, [a skin disorder] was diagnosed as a fungus."* R. at 231 (emphasis added); *see* R. at 186. The veteran noted that in the transcript from that hearing part of the doctor's statement had been "scratched out of the record." R. at 231.

A member of the rating board pointed out that in order to reopen a claim for service connection for a skin condition now that the BVA had denied the claim twice, the veteran would have to present new and material evidence. R. at 232–33. The veteran stated that perhaps the medical report of Dr. Bressinck, the VA dermatologist who examined him in October 1982 and stated that he agreed with the opinion of Dr. Davis that the veteran's psoriasis began as dermatitis around the ears, would be new and material evidence since that report had not been before the BVA. R. at 233, 236–37. With regard to the opinion of Dr. Bressinck, the veteran's attorney noted, "You've got an inhouse physician who agrees that dermatitis around the ears is just a symptom, or is the first stage of what he has right now, and that would seem to me to be new evidence." R. at 237. Finally, the veteran asked if the VA would search for medical records and sick call reports not found on previous searches for his medical records. R. at 233.

On March 23, 1983, the RO rating board confirmed the denial of service connection, stating that supplemental SMRs furnished duplicate copies of a 1950 examination and provided no evidence of treatment for psoriasis. R. at 245. An SOC, dated April 4, 1983, was subsequently sent to the veteran (R. at 246–49), and he submitted a VA Form 1–9, dated April 16, 1983, on which he requested a hearing before a travelling section of the BVA. R. at 250. There is no evidence in the record as to whether this appeal to the BVA ever resulted in an opinion of the Board. Although it appears that the veteran filed an NOD which triggered the April 4, 1983, SOC, and although he evidently perfected his appeal by filing a VA Form 1–9, which is of record, in the BVA decision presently before this Court on appeal, the BVA found as fact that the

"originating agency's determination ... in March 1983 was not timely appealed." *Stephens*, BVA 90–46095, at 5.

In a letter to the VA dated February 14, 1989, the veteran sought to have the VA consider his claim for service connection for "dermatitis and arthritis *based on error."* R. at 252–53 (emphasis added). In reply to his letter, the VA wrote to the veteran on April 19, 1989, and informed him that in order to reopen his claim he must submit "medical evidence not previously considered that shows treatment in service or prior to April 18, 1947." R. at 255. Subsequently, the veteran wrote a letter, dated June 29, 1989, in which he explained that he "wanted to file a Notice of Disagreement and request to have a personal hearing at which time I intend to present new evidence, have a witness and call attention to facts of record which I believe you are not giving consideration." R. at 256. An SOC, dated August 7, 1989, was subsequently sent to the veteran. R. at 258–62. A hearing was held at the RO on August 17, 1989, and, in December 1989, a search was made for lost service medical records, but the search was unsuccessful. R. at 263–72. A Supplemental SOC dated January 23, 1990, was sent to the veteran. R. at 274–76.

On December 7, 1990, the BVA denied the veteran's claim for service connection for chronic skin disability, including psoriasis, and for arthritis, including psoriatic arthritis. The BVA found that the veteran's statements, a copy of a news article regarding the veteran (which is not of record), and a report from the National Personnel Records Center indicating that no additional pertinent records are available did not constitute new and material evidence sufficient to reopen the veteran's claim of service connection for a skin disorder which had been denied by the BVA in June 1980 and December 1981 and by the agency of original jurisdiction in March 1983. *Stephens*, BVA 90–46095, at 2, 5.

## ANALYSIS

### A. New and Material Evidence

 "Except as provided in section 5108 [formerly section 3008] of this title,

when a claim is disallowed by the Board, the claim may not thereafter be reopened and allowed and a claim based upon the same factual basis may not be considered." 38 U.S.C. § 7104(b) (formerly § 4004(b)). Section 5108 provides: "If new and material evidence is presented or secured with respect to a claim which has been disallowed, the Secretary [of Veterans Affairs (Secretary)] shall reopen the claim and review the former disposition of the claim." Thus, only if the evidence submitted by appellant is found to be both "new" and "material" may the claim be reopened and the entire record reviewed. *See Manio v. Derwinski*, 1 Vet.App. 140 (1991); *Jones v. Derwinski*, 1 Vet.App. 210 (1991). In *Colvin v. Derwinski*, 1 Vet.App. 171 (1991), the Court stated that "[n]ew evidence is not that which is merely cumulative of other evidence on the record. Material evidence is relevant and probative of the issue at hand." *Id.* at 174 (citations omitted). The Court held that "to justify a reopening on the basis of new and material evidence, there must be a reasonable possibility that the new evidence, when viewed in the context of all the evidence, both new and old, would change the outcome." *Id.* The determination as to whether evidence is "new and material" is a conclusion of law which this Court reviews de novo under 38 U.S.C. § 7261(a)(1) and (a)(3)(A) (formerly § 4061). *Colvin*, 1 Vet.App. at 174; *see also Masors v. Derwinski*, 2 Vet.App. 181, 185 (1992) (whether evidence is "new and material" is reviewed de novo under § 7261(a)(1)); *Manio*, 1 Vet.App. at 146; *Smith v. Derwinski*, 1 Vet.App. 178, 180 (1991) (if BVA determination that evidence was not "new and material" was "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law," a remand is required under § 7261(a)(3)(A)).

■ Based on the record here, the Court holds that the evidence most recently submitted did not constitute new and material evidence on the claim for service connection for a skin disorder, because that evidence was not sufficient to meet the *Colvin* test. Therefore, the Court holds that the BVA's determination that the evidence was not "new and material" was correct.

## B. Clear and Unmistakable Error

■ In his motion, the Secretary notes "that the only Board decision subject to review is the decision of December 7, 1990," and that "[t]he Board decisions of June 1980 and December 1981 are not the product of clear and unmistakable error, thus they are not subject to review." Secretary's Mot. at 8. Whether or not previous Board decisions are subject to review by this Court depends upon whether the BVA, in the decision that is presently before us on appeal and over which we otherwise have jurisdiction, rendered a determination "on the specific issue of 'clear and unmistakable error.'" *Russell v. Principi*, 3 Vet.App. 310, 315 (1992) (en banc). "Without a final adjudication by the Board on this issue, the Court does not have jurisdiction to review it...." *Chisem v. Principi*, 3 Vet.App. 322, 329 (1992).

■ In his February 14, 1989, letter to the VA, the veteran sought to have the VA consider his claim for service connection for "dermatitis and arthritis *based on error.*" R. at 252–53 (emphasis added). Without responding to the veteran's allegation of error, the RO replied to the veteran's letter by stating that "[i]n order to reopen your claim, you should submit medical evidence not previously considered that shows treatment in service or prior to April 18, 1947." R. at 255. However, in the SOC, dated August 7, 1989, the VA noted that the veteran "states prior decisions are in error" (R. at 260) and, under "Pertinent Laws; CFR Provisions," included 38 C.F.R. § 3.105(a) (R. at 261), which provides in pertinent part as follows:

(a) *Error.* Previous determinations on which an action was predicated ... will be accepted as correct in the absence of clear and unmistakable error. Where evidence establishes such error, the prior decision will be reversed or amended....

38 C.F.R. § 3.105(a) (1991). The BVA, in its December 7, 1990, decision, also includes in its citations to pertinent statutes and regulations references to the regulation on error. *Stephens*, BVA 90–46095, at

3, 6. Thus, it appears that, although the BVA may have reviewed the prior decisions for clear and unmistakable error, the absence of reasons or bases for its decision to deny the veteran's claim on this ground does not "permit effective judicial review" by the Court in this case. *Gilbert v. Derwinski*, 1 Vet.App. 49, 57 (1990) (quoting *Int'l Longshoremen's Assoc. v. Nat'l Mediation Bd.*, 870 F.2d 733, 735 (D.C.Cir. 1989)).

Because the Board did not provide adequate reasons or bases for its apparent determination that there was no clear and unmistakable error in previous adjudications of this claim, the case must be remanded. Upon remand, the Court expects that the Board will heed the admonishment of this Court in *Fletcher v. Derwinski*, 1 Vet.App. 394, 397 (1991), with regard to the purpose of remand:

> We do not mean to imply that a remand, such as is done here, is merely for the purposes of rewriting the opinion so that it will superficially comply with the "reasons or bases" requirement of 38 U.S.C. § 7104(d)(1) (formerly § 4004). A remand is meant to entail a critical examination of the justification for the decision.

Accordingly, the Court instructs the Board upon remand to reexamine the evidence of record, apply the appropriate law and regulations to the facts of the case, and issue a timely, well-supported decision. The Court further instructs the Board to consider in particular the veteran's questions regarding previous denials of his claim notwithstanding the evidence in the record that several doctors, including dermatologists, stated that the dermatitis of the ears that the veteran was treated for in service and the psoriasis which developed in the years since service were the same ailment.

## III. CONCLUSION

For the reasons stated above, the December 7, 1990, decision of the BVA is VACATED, and the matter REMANDED for further adjudication consistent with this opinion.

FARLEY, Associate Judge, concurring:

Appellant's claim for service connection for a skin condition was denied in 1980 and 1981 decisions by the BVA and in a March 1983 rating decision which became final when an appeal was not pursued.

In 1989, appellant sought to have his claim reopened and readjudicated pursuant to 38 U.S.C. § 5108 by submitting as new and material evidence his own testimony (R. at 263–69), a newspaper article about himself (not of record), and a statement that additional service medical records could not be located (R. at 272). The BVA determined that the proffered evidence was "cumulative in effect." *Wilbur B. Stephens*, BVA 90–46095, at 5 (Dec. 7, 1990).

I agree with the BVA that the 1989 evidence was cumulative of that considered previously. *Compare, e.g.*, the 1989 hearing testimony (R. at 263–69) with 1983 testimony (R. at 228–43) and with 1981 testimony (R. at 174–86) and with 1979 testimony (R. at 105–13). In the separate opinion which follows, my brother Steinberg points to certain passages of the 1989 hearing from which he purports to glean six nuggets of "new" evidence. However, my prospecting of the earlier hearings compels me to continue to adhere to my view that the new evidence is cumulative. *See, e.g.*, R. at 175–76 (appellant explains the absence of a notation of skin problems on his discharge examination by first stating that he did not recall the examination and then stating that, if there was such an examination, the "utmost thing in [his] mind was [to] get home" and he supposed that "they ran me through like a cow"); R. at 176, 182 (appellant and his attorney discuss Dr. Champion's opinion that appellant's condition was service connected); R. at 113, 181 (appellant states that he was unable to work due to his condition); R. at 112 (when appellant first sought treatment for skin problems on his ears there were also small amounts on his elbows and knees); R. at 174–75, 180, 186, 228–9, 233 (appellant or his attorney testified to appellant having received outpatient and "sick call" treatment for skin problems during service).

Like the majority, I would affirm the BVA's determination that the evidence was not "new and material." I would do so, however, solely for the reason that the evidence submitted by appellant was not "new." I find no justification for the majority's resort to the "reasonable possibility" test of *Colvin v. Derwinski*, 1 Vet.App. 171, 174 (1991), in this appeal. Moreover, for the reasons contained in my dissenting opinion in *Blanchard v. Derwinski*, 3 Vet. App. 300, 303–05 (1992), I continue to believe that the adoption by the Court of the "reasonable possibility" test in *Colvin* was error and should be overturned.

STEINBERG, Associate Judge, concurring:

I join in the excellent opinion of the Court. In view of the concurring opinion of Judge Farley, I write separately to point out that in the appellant's hearing testimony of August 17, 1989, he included six items of information that were, indeed, "new": (1) His assertion that his service separation examination listed no skin ailment because, although he then had a skin ailment, he did not claim one for fear that his discharge would be delayed (R. at 264); (2) his assertion that Dr. Champion had opined that the veteran's skin condition was service connected (R. at 264); (3) his assertion that his arthritis is "the same" and that his psoriasis is "in remission" (R. at 265); (4) his assertion that he was laid off in 1967 (R. at 265); (5) his assertion that the involvement of his elbows and knees occurred "almost simultaneous[ly]" with his ear fungus (R. at 266); and (6) his assertion that he received outpatient treatment in service for dermatitis (R. at 269). None of these factual assertions is cumulative of anything previously in the record; they are, therefore, "new."

In contrast, however, under the *Colvin* standard as set forth in the Court's opinion at page 174, none of these assertions is "material"—either because they are not "relevant or probative" (in the case of items (3), (4), and (5)) or because they do not, "when viewed in the context of all the evidence, both new and old", "create a reasonable possibility [of changing] the outcome" on the appellant's claim for service connection of a chronic skin condition (in the case of items (1), (2), and (6)). *Colvin v. Derwinski*, 1 Vet.App. 171, 174 (1991).