Citation Nr: 1550135 
Decision Date: 11/30/15 Archive Date: 12/04/15

DOCKET NO. 13-26 480 ) DATE
 )
 )

On appeal from the
Department of Veterans Affairs Regional Office in Salt Lake City, Utah


THE ISSUES

1. Entitlement to service connection for bilateral hearing loss.

2. Entitlement to service connection for tinnitus.

3. Entitlement to service connection for a psychiatric disability, to include a mood disorder.


WITNESS AT HEARING ON APPEAL

The Veteran


ATTORNEY FOR THE BOARD

J. W. Loeb, Counsel
INTRODUCTION

The Veteran served on active duty from November 1976 to December 1977; his military occupational specialty was aviation structural mechanic. 

This case initially came before the Board of Veterans' Appeals (Board) on appeal from a January 2013 rating decision of the Department of Veterans Affairs (VA) Regional Office (RO) in Salt Lake City, Utah. In May 2015, the Board denied entitlement to service connection for a head injury and for headaches and remanded the issues listed on the title page to the RO to obtain VA evaluations and nexus opinions. 

In response to the Board's remand, nexus opinions were obtained in June 2015 and added to the record. Consequently, there has been substantial compliance with the May 2015 remand instructions. Stegall v. West, 11 Vet. App. 268 (1998) (Holding that a remand by the Court or the Board confers on the Veteran or other claimant, as a matter of law, the right to compliance with the remand orders). 

The Veteran testified at a videoconference hearing before the undersigned Veterans Law Judge (VLJ) in September 2014, and a transcript of the hearing is of record.


FINDINGS OF FACT

1. The Veteran does not have a bilateral hearing loss that is related to his military service.

2. The evidence is at least in equipoise as to whether the Veteran has tinnitus due to an event or incident of his active service.

3. The Veteran does not have a psychiatric disability, to include a mood disorder, that is related to his military service.


CONCLUSIONS OF LAW

1. Bilateral hearing loss was not incurred in or aggravated by active military service, nor may sensorineural hearing loss be presumed to have been so incurred or aggravated. 38 U.S.C.A. §§ 1110, 1131, 5103A, 5107 (West 2002); 38 C.F.R. 
§ 3.303, 3.307, 3.309 (2015). 

2. The criteria for entitlement to service connection for tinnitus are met. 38 U.S.C.A. 38 U.S.C.A. §§ 1110, 5103A, 5107 (West 2002); 38 C.F.R. §§ 3.102, 3.303 (2015).

3. The criteria for entitlement to service connection for a psychiatric disability, to include a mood disorder, are not met. 38 U.S.C.A. 38 U.S.C.A. §§ 1110, 5103A, 5107 (West 2002); 38 C.F.R. §§ 3.102, 3.303 (2015).


REASONS AND BASES FOR FINDINGS AND CONCLUSIONS

Duty to Assist and Notify

The Board has considered the Veterans Claims Assistance Act of 2000 (VCAA). See 38 U.S.C.A. §§ 5100, 5102, 5103, 5103A, 5106, 5107, 5126 (West 2002 and Supp. 2014). The regulations implementing VCAA have been enacted. See 38 C.F.R. §§ 3.102, 3.156(a), 3.159, 3.326(a) (2015). 

VA has a duty to notify the claimant of any information and evidence needed to substantiate and complete a claim. 38 U.S.C.A. §§ 5102, 5103. See also Quartuccio v. Principi, 16 Vet. App. 183 (2002). After having carefully reviewed the record on appeal, the Board has concluded that the notice requirements of VCAA have been satisfied. 

The notice and assistance provisions of VCAA should be provided to a claimant prior to any adjudication of the claim. Pelegrini v. Principi, 18 Vet. App. 112 (2004). The RO sent the Veteran a letter in November 2012, prior to adjudication, which informed him of the requirements needed to establish entitlement to service connection. Pelegrini, 18 Vet. App. at 120. This letter informed the Veteran what evidence and information he was responsible for and the evidence that was considered VA's responsibility. The Veteran was also informed in the letter about disability ratings and effective dates. See Dingess/Hartman v. Nicholson, 19 Vet. App. 473 (2006). Additional relevant private evidence was subsequently added to the case after the November 2012 letter. 

VA has a duty to assist the claimant in obtaining evidence necessary to substantiate a claim. VCAA also requires VA to provide a medical examination when such an examination is necessary to make a decision on the claim. 38 U.S.C.A. § 5103A(d); 38 C.F.R. § 3.159. Relevant VA evaluations, with nexus opinion, were obtained in June 2015. 

When VA undertakes to provide a VA examination or obtain a VA opinion, it must ensure that the examination or opinion is adequate. Barr v. Nicholson, 21 Vet. App. 303, 312 (2007). The Board finds that the June 2015 VA examinations, with nexus opinions, obtained in this case are adequate, as they involve review of the record, examination of the Veteran, and an opinion on whether the Veteran has the disability at issue due to service. Accordingly, the Board finds that VA's duty to assist in obtaining a VA examination or opinion with respect to the issues on appeal has been met. 38 C.F.R. § 3.159(c)(4).

The Board concludes that all available evidence has been obtained and that there is sufficient medical evidence on file on which to make a decision on the issues decided herein. The Veteran has been given ample opportunity to present evidence and argument in support of his claims, including at his September 2014 videoconference hearing. The Board additionally finds that general due process considerations have been complied with by VA, and the Veteran has had a meaningful opportunity to participate in the development of the claims. Mayfield v. Nicholson, 19 Vet. App. 103 (2005), rev'd on other grounds, 444 F.3d 1328 (Fed. Cir. 2006); 38 C.F.R. § 3.103 (2007). 

In Bryant v. Shinseki, 23 Vet. App. 488 (2010), the United States Court of Appeals for Veterans Claims (Court) held that 38 C.F.R. § 3.103(c)(2) requires that the individual who conducts a hearing fulfill the same duties to comply with the above regulation. At the September 2014 hearing, the undersigned asked the Veteran questions about the bases for the service connection issues decided on appeal. The hearing focused on the elements necessary to substantiate the claims, and the Veteran, through his testimony, demonstrated that he had actual knowledge of the elements necessary to substantiate the claims. Additional evidence was subsequently obtained and added to the record. Therefore, the Board finds that, consistent with Bryant, the undersigned complied with the duties set forth in 38 C.F.R. § 3.103(c)(2).


Analysis of the Claims

The Veteran seeks service connection for bilateral hearing loss, tinnitus, and a psychiatric disability as a result of his military service. 

Service connection may be granted for disability or injury incurred in or aggravated by active military service. 38 U.S.C.A. §§ 1110, 1131; 38 C.F.R. § 3.303(a). Service connection may also be granted for disability shown after service, when all of the evidence, including that pertinent to service, shows that it was incurred in service. 38 C.F.R. § 3.303(d); Cosman v. Principi, 3 Vet. App. 303, 305 (1992). 

Moreover, in the case of sensorineural hearing loss, service connection may be granted if the disorder is manifested to a compensable degree within one year following separation from service. 38 U.S.C.A. §§ 1101, 1112, 1113, 1137; 38 C.F.R. §§ 3.307, 3.309. 

In order to establish direct service connection for a disorder, there must be (1) competent evidence of the current existence of the disability for which service connection is being claimed; (2) competent evidence of a disease contracted, an injury suffered, or an event witnessed or experienced in active service; and (3) competent evidence of a nexus or connection between the disease, injury, or event in service and the current disability. Davidson v. Shinseki, 581 F.3d 1313 (Fed. Cir. Sept. 14, 2009); cf. Gutierrez v. Principi, 19 Vet. App. 1, 5 (2004) (citing Hickson v. West, 12 Vet. App. 247, 253 (1999)). In many cases, medical evidence is required to meet the requirement that the evidence be "competent". However, when a condition may be diagnosed by its unique and readily identifiable features, the presence of the disorder is not a determination "medical in nature" and is capable of lay observation. Barr v. Nicholson, 21 Vet. App. 303, 309 (2007).

The Board must determine the value of all evidence submitted, including lay and medical evidence. Buchanan v. Nicholson, 451 F.3d 1331 (Fed. Cir. 2006). The evaluation of evidence generally involves a 3-step inquiry. First, the Board must determine whether the evidence comes from a "competent" source. The Board must then determine if the evidence is credible, or worthy of belief. Barr v. Nicholson, 21 Vet. App. 303 at 308 (2007) (Observing that once evidence is determined to be competent, the Board must determine whether such evidence is also credible). The third step of this inquiry requires the Board to weigh the probative value of the proffered evidence in light of the entirety of the record. 

Competent lay evidence means any evidence not requiring that the proponent have specialized education, training, or experience. Lay evidence is competent if it is provided by a person who has knowledge of facts or circumstances and conveys matters that can be observed and described by a lay person. 38 C.F.R. § 3.159. Lay evidence may be competent and sufficient to establish a diagnosis of a condition when:

(1) a layperson is competent to identify the medical condition (i.e., when the layperson will be competent to identify the condition where the condition is simple, for example a broken leg, and sometimes not, for example, a form of cancer);

(2) the layperson is reporting a contemporaneous medical diagnosis, or;

(3) lay testimony describing symptoms at the time supports a later diagnosis by a medical professional. 

Jandreau v. Nicholson, 492 F. 3d 1372 (Fed. Cir. 2007); see also Davidson v. Shinseki, 581 F.3d 1313 (Fed. Cir. 2009) (where widow seeking service connection for cause of death of her husband, the Veteran, the Court holding that medical opinion not required to prove nexus between service connected mental disorder and drowning which caused Veteran's death). 

In ascertaining the competency of lay evidence, the Courts have generally held that a layperson is not capable of opining on matters requiring medical knowledge. Routen v. Brown, 10 Vet. App. 183 (1997). In certain instances, however, lay evidence has been found to be competent with regard to a disease with "unique and readily identifiable features" that is "capable of lay observation." See, e.g., Barr v. Nicholson, 21 Vet. App. 303 (2007) (concerning varicose veins); see also Jandreau v. Nicholson, 492 F. 3d 1372 (Fed. Cir. 2007) (a dislocated shoulder); Charles v. Principi, 16 Vet. App. 370 (2002) (tinnitus); Falzone v. Brown, 8 Vet. App. 398 (1995) (flatfeet). Laypersons have also been found to not be competent to provide evidence in more complex medical situations. See Woehlaert v. Nicholson, 21 Vet. App. 456 (2007) (concerning rheumatic fever).

Competent medical evidence is evidence provided by a person who is qualified through education, training, or experience to offer medical diagnoses, statements, or opinions. Competent medical evidence may also include statements conveying sound medical principles found in medical treatises. It also includes statements contained in authoritative writings, such as medical and scientific articles and research reports or analyses. 38 C.F.R. § 3.159(a)(1).

After determining the competency and credibility of evidence, the Board must then weigh its probative value. In this function, the Board may properly consider internal inconsistency, facial plausibility, and consistency with other evidence submitted on behalf of the claimant. Caluza v. Brown, 7 Vet. App. 498, 511-512 (1995), aff'd, 78 F.3d 604 (Fed. Cir. 1996) (per curiam) (table); see Madden v. Brown, 125 F.3d 1447 (Fed Cir. 1997) (holding that the Board has the "authority to discount the weight and probative value of evidence in light of its inherent characteristics in its relationship to other items of evidence"). 
Hearing Loss and Tinnitus

The Veteran's service treatment records do not reveal any complaints of clinical findings of hearing loss or tinnitus, including on separation audiological evaluation in December 1977. The Veteran was involved in an automobile accident in May 1977 that resulted in a diagnosis of superficial lacerations and small hematoma. 

A VA audiological evaluation was conducted in November 2012. The Veteran complained of hearing loss and tinnitus and said that his tinnitus began while working around jets in service. Bilateral sensorineural hearing loss was diagnosed. After examination of the Veteran and review of the record, the examiner concluded that hearing loss was less likely as not caused by or the result of service noise exposure because his hearing was within normal limits on entrance and separation audiograms, with no significant change. It was noted that the Veteran had been exposed to acoustic trauma in service and after discharge. The examiner also concluded that the Veteran's tinnitus was less likely than not caused by or the result of military noise exposure because it is likely related to hearing loss, which was not due to service noise exposure. 

The Veteran testified at his September 2014 hearing that he was exposed to acoustic trauma on the flight line in service with ineffective hearing protection.

In response to the Board's May 2015 remand, a VA audiological evaluation was conducted in June 2015. The Veteran complained of a 40 year history of hearing loss and of tinnitus since working with jets in service. Bilateral sensorineural hearing loss was diagnosed. The audiologist concluded that the results were not valid for rating purposes. The audiologist did not test all frequencies due to inconsistencies. According to the audiologist, the results indicated that the best admitted thresholds were not a true reflection of the Veteran's hearing capability. The use of puretone averages and word recognition scores was not appropriate for this Veteran because of language difficulties, cognitive problems, and inconsistent word recognition scores. The examiner noted that, despite the invalidity of the audiogram results, appropriate nexus opinions could be provided. As there was no significant decrease in hearing between 1976 and 1977, during the time that he was exposed to acoustic trauma in service, it is less likely than not that his current hearing loss was caused by service. According to the audiologist, the most comprehensive information currently available suggests that the delayed onset of hearing loss from noise exposure is unlikely. 

With respect to the Veteran's tinnitus, the audiologist concluded in June 2015 that it was less likely than not that the Veteran's current tinnitus was caused by or the result of military noise exposure. The etiology of tinnitus cannot be determined using current clinical technologies; rather, it is inferred from a Veteran's history and other evidence. There is no mention of tinnitus in the service treatment records and there is no significant hearing decrease that might indicate that noise exposure was causing auditory damage. 

The Veteran's hearing was normal in service and the initial medical evidence of hearing loss was not until November 2012, which is almost 35 years after service separation. After review of the record and examination of the Veteran in June 2015, a VA audiologist concluded that even though the audiogram results were considered to be invalid, it was less likely than not that the Veteran's current hearing loss was due to exposure to acoustic trauma in service because there was no significant decrease in hearing levels on service audiograms. Although denying a claim for service connection for hearing loss based solely on the absence of hearing loss during service is insufficient under Hensley v. Brown, 5 Vet. App. 155 (1993), the audiologist in this case discussed why the hearing results in service did not show disability. Therefore, because a rationale based on the hearing results in service was provided, Hensley does not apply.

Due consideration has been given to the Veteran's statements in support of his claim. Although the Veteran is competent to report symptoms of hearing loss, he is not competent to opine that he currently has a bilateral hearing loss disability due to service. Consequently, service connection for bilateral hearing loss is denied. Based on the above, the Board finds that the preponderance of the evidence is against the Veteran's service connection claim, and the doctrine of reasonable doubt is not for application. See 38 U.S.C.A. § 5107(b); Gilbert v. Derwinski, 1 Vet. App. 49, 55-57 (1990).
Determining whether the Veteran's tinnitus is due to service is different than determining whether hearing loss is due to service because tinnitus cannot be measured as can loss of hearing. After review of the evidence as a whole, the Board finds that the evidence in favor of the claim, primarily the Veteran's military occupational specialty of aviation structural mechanic and his consistent contentions on VA evaluations in November 2012 and June 2015 and at his videoconference hearing in September 2014 that he has had ringing in his ears since he was on the flight line in service, reasonably shows that the Veteran's tinnitus was incurred as a result of service and that there has been continuation of symptomatology since service. In this case, the Board finds the Veteran's assertions regarding the continuity of his symptoms to be credible and corroborated by competent evidence.


Psychiatric Disability

The Veteran's service treatment records do not reveal any complaints or clinical findings indicative of a psychiatric disability, including on separation examination in December 1977. The Veteran was involved in an automobile accident in May 1977 with no loss of consciousness. 

VA treatment records from March 2007 to May 2014 reveal treatment for psychiatric problems. The Veteran reported a 30 year history of depression in March 2007; the diagnoses were mood disorder, not otherwise specified; alcohol dependence, in remission; and antisocial personality disorder. A mood disorder was also diagnosed in March 2010.

Social Security Administration (SSA) records on file include a Mental Summary showing reports dated from August 2008 to September 2009. The Veteran reported in August 2008 that he had lifelong depression.

According to a July 2014 report from C. J. Vinegra, M.D., the Veteran had a mood disorder. He was on medication and was unable to work.

The Veteran testified at his September 2014 hearing that he has a psychiatric disability as a result of service trauma.

In response to the May 2015 Board remand, a psychiatric evaluation and opinion were obtained in June 2015 from a VA clinical psychologist. The Veteran denied mental health treatment or a history of drug or alcohol abuse in service. It was noted that the Veteran had had problems with low self-esteem prior to service entrance. On mental status evaluation, the Veteran was fully oriented, with a normal affect and a good mood. His speech was unremarkable. He did not have any delusions or hallucinations and no suicidal or homicidal ideation. The diagnoses were other specified depressive disorder, mild; and stimulant use disorder, in sustained remission. Because he was noted to be somewhat evasive when responding to questions and to have frequently contradicted previous responses, he was considered to be a questionable historian. 

After examination of the Veteran and review of the record, the examiner concluded that the Veteran's symptoms of other specified depressive disorder were less likely than not related to incidents he reported experiencing during service. There was no evidence of functional impairment due to his disorder. The examiner noted that the Veteran's low self-esteem was indicative of depressive symptoms prior to service. With the exception of the Veteran's disappointment in not being assigned his occupation of choice in service, he did not report any other distressing events, occurrences, symptoms, or behaviors. 

The above evidence does not show that the Veteran has a psychiatric disability, to include a mood disorder, as a result of service. His service treatment records do not reveal any psychiatric complaints or findings, including on separation examination in December 1977. The initial evidence of a post-service psychiatric disorder was not until March 2007, when the Veteran reported a long history of depression. Lifelong depression was noted in SSA records for August 2008. Moreover, the only nexus opinion on file is against the claim. After reviewing the record and interviewing the Veteran, a VA clinical psychologist concluded that the Veteran's only current disability was a mild other specified depressive disorder, which was not causally related to service because he had had problems with depression prior to service, because there were no psychiatric complaints or findings in service, and because he did not report any clear stressors during service. 

Due consideration has been given to the Veteran's statements in support of his claim. Although the Veteran is competent to report his psychiatric symptoms, he is not competent to opine that he currently has a chronic psychiatric disability due to service because the diagnosis of a psychiatric disability such as a mood disorder and the determination of the etiology of the disability require medical expertise. See Jandreau v. Nicholson, 492 F.3d 1372 (Fed. Circ. 2007). 

Based on the above, the Board finds that the preponderance of the evidence is against the Veteran's claim for entitlement to service connection for a psychiatric disability, to include a mood disorder, and the doctrine of reasonable doubt is not for application. See 38 U.S.C.A. § 5107(b); Gilbert v. Derwinski, 1 Vet. App. 49, 55-57 (1990).


ORDER

Entitlement to service connection for a bilateral hearing loss is denied.

Entitlement to service connection for tinnitus is granted.

Entitlement to service connection for a psychiatric disability, to include a mood disorder, is denied.



____________________________________________
ROBERT C. SCHARNBERGER
Veterans Law Judge, Board of Veterans' Appeals


Department of Veterans Affairs