# UNITED STATES COURT OF APPEALS FOR VETERANS CLAIMS

No. 00-669

Michelle C. Jones, Appellant,

v.

Anthony J. Principi,
Secretary of Veterans Affairs, Appellee.

On Appeal from the Board of Veterans' Appeals

(Argued April 23, 2002                Decided   August 7, 2002   )

*Michael P. Horan*, of Washington, D.C., for the appellant.

*Kathy A. Banfield*, with whom *Tim S. McClain*, General Counsel; *R. Randall Campbell*, Acting Assistant General Counsel; and *Darryl A. Joe*, Acting Deputy Assistant General Counsel, all of Washington, D.C., were on the pleadings, for the appellee.

Before FARLEY, HOLDAWAY, and STEINBERG, *Judges*.

STEINBERG, *Judge*: The appellant, the daughter of a Vietnam veteran, appeals through counsel a March 15, 2000, decision of the Board of Veterans' Appeals (Board or BVA) that denied entitlement to her, as a child of a Vietnam veteran, for a Department of Veterans Affairs (VA) monetary allowance for a disability resulting from spina bifida. Record (R.) at 6. The appellant filed a brief and a reply brief, and the Secretary filed a brief. Oral argument was held on April 23, 2002. On April 25, 2002, the Court ordered supplemental briefing from the parties. In response to the Court's order, the Secretary filed a supplemental record on appeal (ROA) and a supplemental memorandum of law, and the appellant filed a reply to the Secretary's supplemental memorandum. The Court has jurisdiction over the case under 38 U.S.C. §§ 7252(a) and 7266(a). For the reasons set forth below, the Court will vacate the Board decision on appeal and remand the matter for readjudication.

## I. Relevant Background

The veteran served in the U.S. Navy from July 1965 to November 1968 and from December 1968 to July 1971. R. at 9, 130. He had service in Vietnam and received the National Defense Service Medal with Bronze Star, the Vietnam Service Medal, and three Purple Heart Medals. R. at 9. The appellant was born on June 6, 1986. R. at 133.

A December 1997 medical report from Dr. MacDonald, a private physician, recorded that the appellant was an "11-year-old girl [who] is seen for neurological follow-up of her encephalocele", and stated that he "would like to . . . repeat her MRI [(Magnetic Resonance Imaging)] scan of the posterior fossa of the brain and cervical spine area since she did have a syrinx in the past and we should follow that and see if there is any major change." R. at 145. (Encephalocele is "hernia of part of the brain and meninges through a skull defect." DORLAND'S ILLUSTRATED MEDICAL DICTIONARY 548 (28th ed. 1994) [hereinafter DORLAND'S]. Meninges are "the three membranes that envelop the brain and spinal cord". DORLAND'S at 1010. A syrinx is "a tube or pipe . . . [or] a fistula . . . [or] an abnormal cavity in the spinal cord in syringomyelia." DORLAND'S at 1647.)

In January 1998, the veteran filed an application for spina bifida benefits for his daughter. R. at 137. In a note attached to the application, the veteran stated:

> My daughter, Michelle Colleen Jones, was born on 6-6-86 at St. Joseph's Hospital, Denver[,] Colorado. Three & ½ weeks prior to [b]irth, it was detected on ultrasound that the child would have an occipital encephalocele [hereinafter OE], a spinal cord defect, called a [n]eural tube defect.
>
> Along with this, she has hydrocephalus, controlled by bilateral shunts, and [is] also [d]iagnosed with a Chiari II [m]alformation.
>
> Her initial physician Dr. Peter Hulac[,] a [n]eo-[n]atologist[,] . . . and also Dr. Larry McLenny[, a] pediatric neurosurgeon[,] informed my wife [and me] that this is in the [s]pina [b]ifida family in the superior part of the spine.

R. at 138. (OE is "an encephalocele in the occipital region". DORLAND'S at 549. Occipital means "located near the occipital bone, as the occipital lobe of the brain". DORLAND'S at 1167.) A February 1998 letter from Dr. McLellan, a private physician, described the appellant as "an 11-year-old girl with an encephalocele" and notes that "[t]his is associated with hydrocephalus" and that

"[o]ther anatomic anomalies co-existent with the encephalocele include a Chiari [m]alformation which involves a herniation of a portion of cerebellum through the skull outlet[; s]he [also] has a syrinx in the cervical cord". R. at 157.

In March 1998, a VA regional office (RO) denied the appellant's claim. R. at 162. The RO stated that "[c]urrent regulations allow a grant of benefits only where there is protrusion of the meninges through the vertebrae or bony encasement" (R. at 161) (the Court can find no VA regulation with such a limitation, and the Secretary was unable to provide any basis for the RO statement (Supplemental memorandum at 2-3)), and the RO concluded that "[b]y definition[,] an encephalocele, which is the condition that Michelle is diagnosed with, is not spina bifida" (R. at 162). A Notice of Disagreement was filed on behalf of the appellant (R. at 165), and the RO issued a Statement of the Case (R. at 174-78).

An April 1998 letter from Dr. Steidler, a private neuroradiologist, stated:

> This letter is in regards to Michelle C. Jones' diagnoses of encephalocele, Chiari II malformation, and cervical syrinx as it relates to spina bifida. Neural tube defects include multiple abnormalities, only one of which is spina bifida. Spina bifida can be very mild and incidental on radiographs, often at the lumbar region, and of no clinical significance. However, multiple other neural tube closure defects at other levels of the spine as well as the brain and skull can be seen with multiple known associated anomalies such as Chiari II malformation, syringohyrdromyelia, hyrdocephalus, callosal dysgenesis, etc. Therefore, the neural tube closure defects, with spina bifida referring to a finding which is often at the less serious end of this spectrum[,] are considered to be a spectrum of related abnormalities.

R. at 186. A May 1998 letter from Dr. Houston, also a private neuroradiologist, stated: "[OE] is a defect in the skull and dura with extracranial extension of the intracranial structures located in the occipital region. One etiology for cephalocele is failure of closure of the sites of primary neural tube closure." R. at 187. In a May 1998 letter, Dr. MacDonald stated: "[The appellant] had the [OE] with secondary neurologic chronic problems including the shunt, truncal instability, esotrophia, and spinal cord cyst. I think they have to realize that this is a neural tube defect and that an [OE] is a form of spina bifida or open spine". R. at 189. A May 1998 letter from Dr. Yock, a private physician, stated that "it is medically reasonable to consider [OE] in the same category as 'spina bifida' from both emryologic and clinical perspectives." R. at 191.

In July 1998, the VARO requested an advisory opinion from the VA Director of Compensation and Pension Service. R. at 193-94. This request was then relayed to the VA Under Secretary for Health. R. at 196. In response, Dr. Mather, VA Chief Public Health and Environmental Hazards Officer, stated in pertinent part:

> [The appellant] was born with an [OE] associated with hydrocephalus and Arnold-Chiari malformation. She also has a spinal cord syrinx. The encephaloccele is definitely a neural tube defect, not by embryology or sequelae. In Veterans and Agent Orange: Update 1996, the National Academy of Sciences cited four veterans studies as the reason for their conclusion that limited or suggestive evidence of an association between agent orange and the birth defect, spina bifida, existed. Two of the four veterans studies (the Ranch Hand and the Australian veterans studies) refer specifically to neural tube defects and not to spina bifida per se. (The Erickson and CDC [(Centers for Disease Control)] studies refer to spina bifida and anencephaly, another neural tube defect which is incompatible with life.) The neural tube defects involving the brain instead of the spinal cord tend to be rarer because many of the infants so affected do not survive. However, it is our opinion that the [OE] defect is the equivalent of spina bifida and is clearly within the intent of the legislation granting benefits to offspring of Vietnam veterans.

R. at 198. In May 1999, the VA General Counsel issued a precedent opinion that held that, for purposes of 38 U.S.C. § 1802, "the term 'spina bifida' refers to a defective closure of the bony encasement of the spinal cord, but does not include other neural tube defects such as encephalocele and anencephaly." VA Gen. Coun. Prec. 5-99 (May 3, 1999) [hereinafter G.C. Prec. 5-99]. On May 25, 1999, the RO affirmed the prior denial of benefits. R. at 212. In the March 2000 BVA decision here on appeal, the Board found that, "[p]ursuant to [G.C. Prec.] 5-99, the Board must find that [OE] is not a form of spina bifida" and denied the appellant's claim. R. at 5. The Board noted: "The veteran and the appellant are advised that were they to file a timely appeal of this claim to the Court of Appeals for Veterans Claims (Court) the Court would not necessarily be bound by [G.C. Prec. 5-99]." *Ibid*.

## II. Analysis

The appellant argues that (1) G.C. Prec. 5-99 "violates the plain language of 38 U.S.C.[] § 1802" and "renders that portion of [section] 1802 stating that VA must award special monetary benefits 'for all forms and manifestations of spina bifida except spina bifida occulta' superfluous and

without force by ignoring the word 'manifestations' and reading the statute out of context" (Appellant's Brief (Br.) at 7); (2) G.C. Prec. 5-99 is "invalid in ignoring the Supreme Court's rule of statutory interpretation that the agency must resolve interpretative doubt in favor of the veteran" (Br. at 8); (3) "[t]he [G]eneral [C]ounsel promulgated opinion 5-99 in contravention of the Administrative Procedure[] Act ('APA') rulemaking requirements by adopting this rule without the benefit of public participation" (Br. at 8); and (4) the Board erred by failing to address the appellant's other conditions in order to "determine whether these conditions are 'forms and manifestations of spina bifida'" (Br. at 7).

The Secretary argues that (1) G.C. Prec. 5-99 "correctly interpreted 38 U.S.C. § 1802 as pertaining solely to spina bifida, not all neural tube defects[ and that t]he ordinary meaning of the term [']spina bifida['] and the legislative history of the statute overwhelmingly support the General Counsel's conclusion" (Secretary's Br. at 5); (2) G.C. Prec. 5-99 "constitutes an interpretative rule and is exempt from [APA notice and comment] provisions" (Secretary's Br. at 5); and (3) "[the a]ppellant's argument for remand fails because, as a matter of law, she does not meet the requirements for benefits pursuant to [c]hapter 18 of [t]itle 38[,] United States Code", Secretary's Br. at 6.

### A.   38 U.S.C. § 1802 Generally and G.C. Prec. 5-99

Section 1802 of title 38, U.S. Code, provides in pertinent part:

**§ 1802.  Spina bifida conditions covered**

> This subchapter applies with respect to all forms and manifestations of spina bifida except spina bifida occulta.

Section 1805 provides for monetary benefits to be paid to "any child of a Vietnam veteran for any disability resulting from spina bifida suffered by such child." 38 U.S.C. § 1805; *see also* 38 U.S.C. §§ 1803 (health care benefits provided to "a child of a Vietnam veteran who is suffering from spina bifida"), 1804 (same, as to vocational training and rehabilitation).

"'The starting point in interpreting a statute is its language.'" *Lee (Raymond) v. West*, 13 Vet.App. 388, 394 (2000) (quoting *Good Samaritan Hosp. v. Shalala*, 508 U.S. 402, 409 (1993)).

> The "plain meaning [of a statute] must be given effect unless a 'literal application of [the] statute [or regulation] will produce a result demonstrably at odds with the

intention of its drafters.'" *Gardner v. Derwinski*, 1 Vet.App. 584, 586-87 (1991), *aff'd sub nom. Gardner v. Brown*, 5 F.3d 1456 (Fed. Cir. 1993), *aff'd*, 513 U.S. 115 . . . (1994); *Fagan*[ *v. West*], 13 Vet.App. [48,] 52 [(1999)]; *Curtis*[ *v. West*], 11 Vet.App. [129,] 133 [(1998)]. "If the intent of Congress is clear, that is the end of the matter". *Skinner v. Brown*, 27 F.3d 1571, 1572 (Fed.Cir. 1994) (quoting *Chevron, U.S.A., Inc. v. Natural Resources Defense Council, Inc.*, 467 U.S. 837, 842 . . . (1984)), *aff'ing* 4 Vet.App. 141 (1993) (mem.).

*Lee (Raymond)*, *supra*.

Under 38 U.S.C. § 7104(c), the precedent opinions of the VA General Counsel (GC) are binding on the Board. 38 U.S.C. § 7104(c); *see Cycholl v. Principi*, 15 Vet.App. 355, 360 (2000) (citing *Herlehy v. Principi*, 15 Vet.App. 33, 34 (2001) (per curiam order)); *see also* 38 C.F.R. § 20.901(c) (2001). Hence, the Board was required to follow G.C. Prec. 5-99 to the extent that that opinion addressed issues pertinent to this appellant's claim. That GC opinion first stated definitions, culled from various Internet World Wide Web sites, of "OE" and "spina bifida", and the definition of "spina bifida" from DORLAND'S. G.C. Prec 5-99 at 1-2. The GC opinion then cited legislative history, including the National Academy of Sciences Institute of Medicine (IOM) NAS report, which it describes as the impetus for the spina bifida legislation. G.C. Prec. 5-99 at 3. The GC opinion stated as follows regarding the NAS report:

> As part of its discussion of this possible association, the IOM noted, at page[s] 9-17, that certain epidemiologic studies "suggest an association between herbicide exposure and an increased risk of spina bifida in association with anencephaly." Not only was the conclusion reached by the IOM limited to "spina bifida," the IOM also concluded, at page[s] 9-17, that there was "inadequate or insufficient evidence to determine whether an association exists between exposure to the herbicides and all other birth defects."

G.C. Prec. 5-99 at 3. In addition, G.C. Prec. 5-99 cited to statements made by U.S. Senators Daschle and Rockefeller, as well as a letter from the Secretary of Veterans Affairs to the Speaker of the House and President of the Senate, for the proposition that "the framers of the legislation were concerned only with defects of the spinal column[,] as opposed to neural tube defects in general." G.C. Prec. 5-99 at 3-4. The opinion then concluded:

> The legislative history of chapter 18 is consistent with the commonly[]accepted meaning of the statutory terms in indicating Congress' intention to limit the application of chapter 18 to only those children of Vietnam veterans who suffer from

6

spinal defects. We believe that, had Congress intended to include neural tube defects such as anencephaly and encephalocele, it would not have used the term "spina bifida.'

G.C. Prec. 5-99 at 4. Significantly, however, the opinion did not specifically address the meaning of the words "all forms and manifestations" in section 1802, and in its conclusion did not mention "manifestations". G.C. Prec. 5-99 at 4 (under "HELD").

A review of the pertinent legislative history of section 1802 reveals a July 26, 1996, letter from the Secretary of Veterans Affairs to the Speaker of the U.S. House of Representatives discussing the IOM findings in the NAS report, and "determin[ing] that a positive association exists between exposure of a parent to herbicides during . . . service and the birth defect spina bifida." Supplemental (Suppl.) R. at 64. In that letter, the Secretary asserted that enabling legislation was needed in order to allow VA to compensate the offspring of Vietnam veterans for spina bifida. Suppl. R. at 65. Attached to this letter was draft legislation that, inter alia, defined "spina bifida" to mean "all forms of spina bifida other than spina bifida occulta." Suppl. R. at 70.

The legislative history also reveals other pertinent statements about the spina bifida legislation. First is a statement from Senator Daschle: "Spina bifida occurs when the spinal cord does not close fully early in pregnancy." 142 CONG. REC. S9878 (daily ed. Sept. 5, 1998). Second is a statement from Senator Rockefeller:

> Spina bifida, SB, means 'split spine.' It is a defect of the neural tube, the embryonic structure that evolves into the brain and the spinal cord. It results from the failure of the spine to close properly in the first months of pregnancy.
>
> There are three types of spina bifida, the most common of which is occulta, which is not disabling and is not included in the amendment before us.
>
> What is covered in the proposed amendment are the two much more severe forms of spina bifida. In these forms, a cyst holding the spinal cord membranes, nerve roots of the spinal cord, or the cord itself, usually malformed, pokes through an open part of the spine; or there may be, in fact, no cyst, but only a fully exposed section of the spinal cord and the nerves.

142 CONG. REC. S9888 (daily ed. Sept. 5, 1998). However, neither the above floor statements nor G.C. Prec. 5-99 addressed the reason for the insertion into the legislation of "and manifestations", and the Court has been unable to determine the reason; furthermore, the Court is not satisfied that

7

the words have no meaning. *See Glover v. West*, 185 F.3d 1328, 1332 (Fed. Cir. 1999) (stating that "we attempt to give full effect to all words contained within [a] statute or regulation, thereby rendering superfluous as little of the statutory or regulatory language as possible").

### B. Reasons or Bases

The Board is required to consider all "potentially" applicable provisions of law and regulation. *Schafrath v. Derwinski*, 1 Vet.App. 589, 593 (1991) (Board failure to consider applicable regulation must be set aside). The Board is also required to include in its decision a written statement of the reasons or bases for its findings and conclusions on all material issues of fact and law presented on the record; that statement must be adequate to enable an appellant to understand the precise basis for the Board's decision, as well as to facilitate review in this Court. *See* 38 U.S.C. § 7104(d)(1); *Allday v. Brown*, 7 Vet.App. 517, 527 (1995); *Gilbert v. Derwinski*, 1 Vet.App. 49, 56-57 (1990). To comply with this requirement, the Board must analyze the credibility and probative value of the evidence, account for the evidence that it finds to be persuasive or unpersuasive, and provide the reasons for its rejection of any material evidence favorable to the veteran. *See Caluza v. Brown*, 7 Vet.App. 498, 506 (1995), *aff'd per curiam*, 78 F.3d 604 (Fed. Cir. 1996) (table); *Gabrielson v. Brown*, 7 Vet.App. 36, 39-40 (1994); *Gilbert*, *supra*.

Dr. MacDonald opined in his May 1998 letter that OE "is a form of spina bifida or open spine". R. at 189. Dr. Mather, VA's Chief Public Health and Environmental Hazards Officer, opined that OE is "clearly within the intent of the legislation" involved here. R. at 198. The Board ***acknowledged*** both medical opinions in its decision (R. at 4), but failed to ***discuss*** or ***analyze*** either. Rather, the Board, relying ***solely*** on the definition of "spina bifida" from G.C. Prec. 5-99 (i.e., "a defective closure of the bony encasement of the cord, . . . not includ[ing] other neural tube defects such as encephalocele and anencephaly"), concluded that OE "is not a form of spina bifida, notwithstanding the conflicting medical evidence of record." R. at 5.

The Board erred in reaching this unsubstantiated conclusion. *See generally Smith (George) v. Brown*, 8 Vet.App. 546, 553 (1996) (en banc) (although "the Board is not required to accept the medical authority supporting a claim, it must provide its reasons for rejecting such evidence and, more importantly, must provide a medical basis other than its own unsubstantiated conclusions to support its ultimate decision"). The conclusion of G.C. Prec. 5-99 was that conditions such as OE

8

are not, ***themselves***, spina bifida. *See* G.C. Prec. 5-99 at 4. However, section 1802 states that the "[s]pina bifida conditions covered" are "all ***forms and manifestations*** of spina bifida except spina bifida occulta". 38 U.S.C. § 1802 (emphasis added). The only such "form" or "manifestation" ***excluded*** by the statute is "spina bifida occulta". 38 U.S.C. § 1802. The Board erred in its decision because it failed to recognize that, by the nature of the plain language of the statute, the range of spina bifida ***conditions*** covered is potentially not limited to "spina bifida" per se, but could, potentially, include other "forms and manifestations of spina bifida except for spina bifida occulta". *Ibid.* By making the bare conclusion that "forms and manifestations of spina bifida" means solely "spina bifida", the Board failed to give a reasoned argument explaining why OE is not a "form" or "manifestation" of spina bifida. Such an analysis is critically important to the appellant here and to the Court's ability to review this Board decision, especially in light of the fact that the Board conceded that the record contained "conflicting medical evidence" (R. at 5), apparently referring to the medical opinion from Dr. MacDonald that OE is a "form of spina bifida" (R. at 189) and the medical opinion from VA's Dr. Mather (R. at 198), which could be read as suggesting that she considered OE a form or manifestation of spina bifida. Also, the Board erred by failing to address in any respect either the significance of the term "manifestations" as used in section 1802 or the omission from G.C. Prec. 5-99 of any discussion of this term. *See Schafrath*, *supra*.

The Court notes that it makes no statement as to whether OE is, in fact, a form or manifestation of spina bifida. Such a conclusion is within the purview of the Secretary in the first instance. Furthermore, any such conclusion by the Court would necessarily entail factfinding. *See Elkins v. Gober*, 229 F.3d 1369, 1377 (Fed. Cir. 2000) ("[f]act-finding in veterans cases is to be done by the expert BVA, not by the Veterans Court"); *Hensley v. West*, 212 F.3d 1255, 1263 (Fed. Cir. 2000) (noting "the general rule that appellate tribunals are not appropriate fora for initial fact finding"); *Teten v. West*, 13 Vet.App. 560, 564 (2000). We do note, however, the appellant's argument that the Board failed to address the appellant's other conditions and to determine whether any of these is a form or manifestation of spina bifida. *See* Br. at 7. On remand, the Board must address this question, just as it must address the question whether OE is a form or manifestation of spina bifida.

### C. Appellant's Arguments

As noted above, the appellant argues that G.C. Prec. 5-99 is invalid because it ignores the plain language of section 1802, was promulgated in contravention of the rulemaking requirements of the APA, and "ignor[ed] the Supreme Court's rules of statutory interpretation that the agency must resolve interpretative doubt in favor of the veteran". Br. at 7-8. Because, as noted above, we are vacating the Board decision and remanding the matter based on the Board's reasons-or-bases error found in part II.B., above, it is not yet ripe for us to consider the validity of G.C. Prec. 5-99, and the Court will not address the appellant's arguments at this time. However, the Court reiterates that that GC opinion does not contain any analysis as to the meaning of "all forms and manifestations" in section 1802 and thus provides the Board with no binding instruction regarding those terms to apply to this case on remand in light of the medical evidence from Drs. MacDonald and Mather in support of the claim. The Court also notes that neither the Board decision in this case nor G.C. Prec. 5-99 makes reference to *Brown v. Gardner*, 513 U.S. 115, 117 (1994) (citing *King v. St. Vincent's Hosp.*, 502 U.S. 215, 220-221 n.9 (1991)), in which the U.S. Supreme Court, in interpreting 38 U.S.C. § 1151, noted "the rule that interpretive doubt is to be resolved in the veteran's favor". The Supreme Court also noted that "[a]mbiguity is a creature not of definitional possibilities but of statutory context". *Brown v. Gardner*, *supra*; *cf.* NORMAN J. SINGER, SUTHERLAND ON STATUTORY CONSTRUCTION § 45:09 (6th ed. 2000) ("[k]nowing the purpose behind the statute could help the court decode ambiguous text, but first there must be some ambiguity"). On remand, the Board should address this issue independent from G.C. Prec. 5-99 but may wish to seek a further opinion from the General Counsel.

### III. Conclusion

On the basis of the above analysis, the ROA, and the submissions of the parties, the Court vacates the Board decision and remands the matter for expeditious further development and issuance of a readjudicated decision supported by an adequate statement of reasons or bases, *see* 38 U.S.C. §§ 1802, 5107(a), 7104 (a), (d) (1994 & Supp. V 1999); 38 U.S.C. §§ 5103, 5103A, 5106, 5107, as amended by the Veterans Claims Assistance Act of 2000, Pub. L. No. 106-475, 114 Stat. 2096 (Nov. 9, 2000); 66 Fed. Reg. 45,620, 45,630-32 (Aug. 29, 2001) (amending 38 C.F.R. § 3.159, as

applicable); *Fletcher v. Derwinski*, 1 Vet.App. 394, 397 (1991), all consistent with this opinion and in accordance with section 302 of the Veterans' Benefits Improvements Act of 1994, Pub. L. No. 103-446, § 302, 108 Stat. 4645, 4658 (found at 38 U.S.C. § 5101 note) (requiring Secretary to provide for "expeditious treatment" of claims remanded by BVA or the Court) [hereinafter VBIA § 302]; *see Vargas-Gonzalez v. Principi*, 15 Vet.App. 222, 225-30 (holding that VBIA § 302 applies to all elements of a claim remanded by Court or Board), and with all applicable law and regulation. *See Allday*, 7 Vet.App. at 533-34. On remand, the appellant will be free to submit additional evidence and argument on the remanded claim in accordance with *Kutscherousky v. West*, 12 Vet.App. 369, 372-73 (1999) (per curiam order) (concluding that an appellant is entitled, until 90 days after Board mails postremand notice to appellant, to submit additional evidence and argument or to request hearing on appeal at which appellant may submit new evidence), and all applicable law and regulation. The Court notes that a remand by this Court or by the Board confers on an appellant the right to VA compliance with the terms of the remand order and imposes on the Secretary a concomitant duty to ensure compliance with those terms. *See Stegall v. West*, 11 Vet.App. 268, 271 (1998). A final decision by the Board following the remand herein ordered will constitute a new decision that, if adverse, may be appealed to this Court only upon the filing of a new Notice of Appeal with the Court not later than 120 days after the date on which notice of the Board's new final decision is mailed to the appellant. *See Marsh v. West*, 11 Vet.App. 468, 472 (1998).

VACATED AND REMANDED.