Citation Nr: 1736706 
Decision Date: 08/31/17 Archive Date: 09/06/17

DOCKET NO. 10-00 198 ) DATE
 )
 )

On appeal from the
Department of Veterans Affairs Regional Office in Detroit, Michigan


THE ISSUE

Entitlement to benefits under 38 U.S.C.A. § 1805 for a child of a Vietnam Veteran born with spina bifida.


REPRESENTATION

Appellant represented by: Veterans of Foreign Wars of the United States


WITNESSES AT HEARING ON APPEAL

The Appellant and her mother


ATTORNEY FOR THE BOARD

J. Sandler, Associate Counsel
INTRODUCTION

The Appellant is a child of a Veteran who had 19 years and six months of active duty service, including service in Vietnam. The Appellant is also a Veteran who served on active duty from September 1988 to November 1988. 

This matter is before the Board of Veterans' Appeals (Board) on appeal from a June 2003 rating decision by the Denver, Colorado Department of Veterans Affairs (VA) Regional Office (RO). In June 2012, the Board determined that new and material evidence to reopen the claim had been submitted, and the reopened claim was remanded for further development. In June 2014, the Board remanded the claim again. In February 2011, the Appellant testified at a Board hearing before a Veterans Law Judge (VLJ) no longer with the Board; in May 2017, she testified at a Board hearing before the undersigned VLJ. Transcripts of both hearings are in the record. 

The Appellant was originally granted benefits for spina bifida in November 1997, which were subsequently terminated in October 2000; her appeal of the original termination was withdrawn in September 2002.

The Board notes that it previously characterized the Appellant's claim to be on appeal from a January 2009 rating decision. However, as outlined in the extensive procedural history in the Board's June 2012 remand, the Appellant filed a timely notice of disagreement for a June 2003 (stated as July 2003) rating decision, for which a statement of the case was not issued until November 2009. Accordingly, the claim is properly characterized as on appeal from June 2003.

Finally, subsequent to the most recent supplemental statement of the case, additional private treatment records and additional VA examination records were received without a waiver of review by the Agency of Original Jurisdiction (AOJ). However, this evidence is either not relevant or cumulative of other evidence of record. As such, the Board finds that it may proceed with adjudication. 38 C.F.R. § 20.1304 (2016).

This appeal has been advanced on the Board's docket pursuant to 38 C.F.R. § 20.900(c) (2016). 38 U.S.C.A. § 7107(a)(2) (West 2014).


FINDING OF FACT

The preponderance of the evidence demonstrates that the Appellant was not born with, and never had, spina bifida. 


CONCLUSION OF LAW

The Appellant is not entitled to benefits as a child of a Vietnam Veteran born with spina bifida. 38 U.S.C.A. §§ 1805, 5107(b) (West 2014); 38 C.F.R. § 3.814 (2016).


REASONS AND BASES FOR FINDING AND CONCLUSION

I. Duties to Notify and Assist

VA's duty to notify was satisfied by a letter dated August 2008. See 38 U.S.C.A. §§ 5102, 5103, 5103A (West 2014); 38 C.F.R. § 3.159 (2016); see also Scott v. McDonald, 789 F.3d 1375 (Fed. Cir. 2015).

The record reflects that VA has made reasonable efforts to obtain relevant records adequately identified by the Appellant. Specifically, the information and evidence that have been associated with the claims file include VA and private treatment records.

VA obtained a medical opinion in October 2012. The Board finds that this opinion is adequate for rating purposes as it contains sufficient clinical findings and informed discussion of the pertinent history and features of the disability on appeal to constitute probative medical evidence sufficient to adjudicate the claim. See Barr v. Nicholson, 21 Vet. App. 303 (2007). Specifically, the examiner noted that he reviewed opinions from the Appellant's private physicians, including Dr. M. Priebe, M.D., Dr. I. Alhamrawy, M.D., Dr. C. Dums, M.D., Dr. F. Maynard, M.D., and Dr. L. Skendzel, M.D. 

II. Legal Criteria

VA shall pay a monthly allowance, based upon the level of disability, to a child who has been determined to be suffering from spina bifida and who is a child of a Vietnam Veteran. 38 U.S.C.A. § 1805(a); 38 C.F.R. § 3.814(a). "Spina bifida" means any form and manifestation of spina bifida except spina bifida occulta. 38 U.S.C.A. § 1802; 38 C.F.R. § 3.814(c)(3). Spina bifida is the only birth defect that warrants an award of monetary benefits based on exposure of a Veteran (as a father of the child) to herbicide agents. Jones v. Principi, 16 Vet. App. 219 (2002).

In precedent opinion VAOPGCPREC 5-99 (May 3, 1999), VA's General Counsel held that 38 U.S.C.A. § 1802 applies to all forms of spina bifida other than spina bifida occulta, and that for purposes of that chapter the term "spina bifida" refers to a defective closure of the bony encasement of the spinal cord but does not include other neural tube defects such as encephalocele and anencephaly. 

Spina bifida is a congenital cleft of the vertebral column with hernial protrusion of the meninges. Godfrey v. Brown, 7 Vet. App. 398, 401 (1995). Spina bifida occulta is a "congenital cleft of spinal column," Blanchard v. Derwinski, 3 Vet. App. 300, 301 (1992), and is noncompensable. Firek v. Derwinski, 3 Vet. App. 145, 146 (1992).

Competent lay evidence means any evidence not requiring that the proponent have specialized education, training, or experience. Lay evidence is competent if it is provided by a person who has knowledge of facts or circumstances and conveys matters that can be observed and described by a layperson. 38 C.F.R. § 3.159(a)(2). Lay evidence can be competent and sufficient to establish a diagnosis of a condition when (1) a layperson is competent to identify the medical condition, (e.g., a broken leg), (2) the layperson is reporting a contemporaneous medical diagnosis, or (3) lay testimony describing symptoms at the time supports a later diagnosis by a medical professional. Jandreau v. Nicholson, 492 F.3d 1372 (Fed. Cir. 2007). However, competent medical evidence is necessary where the determinative question is one requiring medical knowledge.

A medical article or treatise can provide important support when combined with an opinion of a medical professional if the medical article or treatise evidence discusses generic relationships with a degree of certainty such that, under the facts of a specific case, there is at least plausible causality based upon objective facts rather than on a lay medical opinion. Mattern v. West, 12 Vet. App. 222 (1999); Sacks v. West, 11 Vet. App. 314 (1998); Wallin v. West, 11 Vet. App. 509 (1998).

When there is an approximate balance of positive and negative evidence regarding the merits of an issue, the benefit of the doubt shall be given to the claimant. 38 U.S.C.A. § 5107(b). If the preponderance of the evidence is against the claim, the claim is to be denied. Gilbert v. Derwinski, 1 Vet. App. 49, 55 (1990).

III. Factual Background

The Appellant states that she has spina bifida, or spina bifida-like symptoms, and that she has three private physicians who diagnosed the condition. Her mother testified that: the Appellant was born prematurely; the doctors told her that her daughter was born with pilonidal sinus, a type of spina bifida; as a baby the Appellant had difficulty urinating; when she was young, she underwent surgery to enlarge her urethra; the Appellant has always been in extreme pain and developed a very high pain threshold to the extent that, as a child, she would not cry when injured. 

The Appellant testified that a pilonidal sinus is the same as spina bifida. She continues to have incontinence and wears padding. She was diagnosed with cervical cancer in 1990, which returned in 2000. She can walk, but it is painful. She experiences other abnormalities related to her reproductive organs.

Records from the Appellant's June 1967 birth reflect a diagnosis of small pilonidal sinus. In April 1973, she underwent a cystoscopy and urethral dilation, and was diagnosed with recurrent urinary tract infections and urethral meatal stenosis. 

During the Appellant's July 1988 military enlistment medical examination, her lower back was marked for further review, but thereafter was noted as normal. During her simultaneous report of medical history, she reported being born with spina bifida, but it was asymptomatic. She was discharged from active duty after two months due to an asthma diagnosis.

In July 1988, the Appellant's private physician, Dr. L. Skendzel, M.D., stated that further evaluation by a specialist would be necessary to determine the cause of her back pain, whether it be from spina bifida, osteoarthritis, or another abnormality. He reported that she did not wish to have further evaluation. 

In October 1997, Dr. Skendzel reported that the Appellant has congenital spina bifida, status post skin graft as a young infant, but that she had not seen him in the past for that condition. She had seen him for low back pain secondary to a December 1988 motor vehicle accident, when she told him that she had back pain even as a young child and teenager secondary to spina bifida.

A December 1998 VA medical treatment record states that the Appellant reported she has spina bifida secondary to her father's exposure to Agent Orange. The record reflects a diagnosis of spina bifida.

During an August 1999 VA examination, the Appellant reported low back pain for most of her life. She also had cold hands, buttocks, and feet. She reported that she was diagnosed with fibromyalgia and wondered if it was complicating her issues. The examiner diagnosed "History of spina bifida secondary to Agent Orange exposure of her father" and disc herniation with debilitating back pain.

The Appellant had several MRIs of her lumbar spine (see December 1998, December 2007). Spina bifida was not mentioned in the MRI impressions.

In February 2000, Dr. C. Lack, M.D., diagnosed spina bifida with possible chronic pain syndrome and reported that the Appellant seems to withhold information regarding her medical history. Thereafter, in May 2000, Dr. Lack diagnosed chronic back pain and advised the Appellant that she could not link her symptoms to spina bifida without a clear diagnosis of what she previously had. She opined that the Appellant had either fibromyalgia or myofascial pain syndrome. She noted that the Appellant appears to be telling different medical providers different stories. Finally, in July 2000, Dr. Lack opined that the Appellant's record does not verify a prior diagnosis of spina bifida and the records do not substantiate such a diagnosis given the fact that no follow-up was needed and the Appellant had normal examinations.

In September 2000, the Appellant provided medical internet articles relating to pilonidal dimples and spina bifida occulta. 

VA treatment records from November 2000 reflect that the Appellant's father told VA that he was told the Appellant had spina bifida when she was born.

In November 2000, Dr. Skendzel stated that he is not an expert "in this area" but that spina bifida is the term for the actual spine and lack of fusion and a pilonidal cyst or tract is a tract from the skin down into the spinal canal area. He did not otherwise opine on the Appellant's condition.

In September 2006, Dr. C. Dums, M.D., conducted an extensive review of the Appellant's medical history and opined that the records suggest that "while she may indeed have had surgical repair of spina bifida, it is perhaps more likely that she had a pilonidal sinus repair." He also mentioned that the Appellant correctly indicated that a pilonidal sinus can be associated with spina bifida, but did not otherwise indicate whether she had spina bifida.

In December 2007, Dr. F. Maynard, M.D., conducted an extensive review of the Appellant's medical history and opined that there is a "Clear history of pilonidal cyst," and probable incomplete sacral paraparesis, possibly progressive due to a spinal dystraphism or sacral canal dennoid or other type of tumor commonly associated with spinal dystraphism syndromes. Mild weakness in the sacral dermatomes and chronic pain accounted for her mild bladder incontinence. However, in January 2008, Dr. Maynard stated that, after review of a negative MRI for spinal dysraphism, he is "at a loss to explain her symptoms." Thereafter, he stated he would write a letter to the VA "documenting her current exam and its possible relationship to her childhood pilonidal sinus tract[.]" (emphasis added).

In February 2008, Dr. M. Priebe, M.D., at the Mayo Clinic, stated that he asked Dr. Maynard to address whether the Appellant had spina bifida; he did not provide his own diagnosis. In an undated note received by VA in March 2009, T. Rowland reported that Dr. Priebe replied to the Appellant's "general question" that "a pilonidal sinus indicates the presence of an opening around the tailbone that may track into the spinal canal, which can be associated with spina bifida. Most likely the patient would have bowel and bladder symptoms as the primary problem with this form of spina bifida."

In June 2009, Dr. I. Alhamrawy, M.D., discussed the Appellant's recent consultation with Dr. Priebe; Dr. Alhamrawy reported that Dr. Priebe stated "that the patient has a pilonidal sinus indicated the presence of an opening around the tailbone that may track into the spinal cord, which can be associated with spina bifida. Most likely the patient would have bowel and bladder symptoms as the primary problem with this form of spina bifida." 

In July 2009, Dr. Priebe opined that the Appellant clearly has symptoms consistent with a neurogenic bladder and bowel, but because "there is no bon[]y defect, she does not have, by definition, Spina Bifida." He added that although there is significant literature available discussing the misdiagnosis of spinal cord dysraphism as a pilonidal sinus, there is no evidence of a spinal dysraphism in the Appellant.

In August 2009 private treatment records, the Appellant reported a history of pilonidal sinus associated with bowel and bladder involvement and also reported that she was recently diagnosed with spina bifida at the Mayo Clinic.

In October 2012, a VA medical examiner reviewed the Appellant's file, including the opinions by Dr. Dums, Dr. Priebe, Dr. Maynard, Dr. Skendzel, and Dr. Alhamrawy. The examiner opined that the Appellant does not now and never did have spina bifida or spina bifida occulta. He explained that multiple MRIs of her lumbosacral spine never demonstrated any abnormalities of the vertebral architecture that would be consistent with spina bifida occulta, meningocele, or meningomyelocele. He stated that the Appellant had a pilonidal cyst, which was diagnosed clinically. He detailed the Appellant's lay statements of difficulty with urination and fecal continence, and her significant back pain. He opined that more likely than not the Appellant's alternating issues and problems with constipation and diarrhea can be attributed to irritable bowel syndrome, and chronic pain and depression "are seen with the spectrum of fibromyalgia," none of which are due to spina bifida. He noted that the Appellant's cognitive parameters appear to be well preserved.

IV. Analysis

The Board does not doubt that the Appellant's parents were told that pilonidal sinus was a form of spina bifida by the doctors handling her birth. However, the evidence does not support that the Appellant's pilonidal sinus was actually spina bifida as defined by VA regulations and as required for VA disability compensation. 

Upon review of the medical opinions of record, the majority of the Appellant's private physicians, including Dr. Maynard, Dr. Dums, and Dr. Priebe, did not diagnose the Appellant with spina bifida. Dr. Maynard and Dr. Priebe acknowledged that pilonidal sinus can be misdiagnosed at birth or can be associated with spina bifida, but neither relates the Appellant's pilonidal sinus to spina bifida. 

The Board acknowledges that December 1998 VA treatment records, Dr. Skendzel, and Dr. Alhamrawy appear to diagnose the Appellant with spina bifida, but those opinions do not outweigh the other medical opinions in the record stating that she does not have spina bifida. Dr. Skendzel's diagnosis and that from December 1998 VA treatment records appear to be based on the Appellant's self-reported history and not diagnosed clinically; Dr. Alhamrawy's opinion is dependent on and appears to be almost an exact dictation of Dr. Priebe's March 2009 response to a "general question," wherein he did not diagnose the Appellant with spina bifida. If taken as evidence of a diagnosis, the March 2009 note is given less probative weight because it is contradicted by Dr. Priebe's July 2009 opinion that the Appellant does not have spina bifida.

The medical articles submitted by the Appellant are not given probative weight because they are general and not specific to the Appellant, nor are they used by any physician to diagnose spina bifida.

The Board has considered the Appellant's testimony that pilonidal sinus is a form of spina bifida, but the diagnosis of spina bifida is a complex medical question that requires medical knowledge. See Jandreau, 492 F.3d 1372. Accordingly, the Board cannot give probative weight to that statement. Additionally, the Appellant's and her mother's reports of her symptoms of life-long pain and incontinence are competent and credible, but such lay reports cannot be used to support a diagnosis of spina bifida, because such diagnosis is a complex medical question. Id. Therefore, these statements cannot be assigned significant probative weight as to the complex medical question of whether spina bifida is present. 

The Appellant's mother reports that, at the time of the Appellant's birth, the doctors told her that the Appellant's pilonidal sinus was a form of spina bifida. The Board finds the Appellant's mother is both credible and competent (qualified) to report these statements. However, medical records from that time and subsequent medical opinions, including the October 2012 VA medical opinion, contradict and outweigh the statements of the doctors who told the Appellant's parents that her pilonidal sinus was a form of spina bifida.

Accordingly, the preponderance of the evidence is against a finding that the Appellant was born with, or ever had, spina bifida, and the claim must be denied.

The Board is grateful to the Appellant and her family's sacrifice to this country and regrets that a more favorable outcome could not be reached.


ORDER

Entitlement to benefits under 38 U.S.C.A. § 1805 for a child of a Vietnam Veteran born with spina bifida is denied.





____________________________________________
VICTORIA MOSHIASHWILI 
Veterans Law Judge, Board of Veterans' Appeals

Department of Veterans Affairs