Citation Nr: 1434253 
Decision Date: 07/31/14 Archive Date: 08/04/14

DOCKET NO. 03-21 605 ) DATE
 )
 )

On appeal from the
Department of Veterans Affairs Regional Office in Albuquerque, New Mexico


THE ISSUES

1. Entitlement to service connection for a neck/upper back disability. 

2. Entitlement to service connection for migraine headaches. 

3. Entitlement to service connection for a right lung disability. 

4. What initial evaluation is warranted for a compression fracture of T-11 (mid-back disability)? 

5. What initial evaluation is warranted for residuals of a fracture of the fifth metacarpal on the right hand (right hand disability)? 



REPRESENTATION

Appellant represented by: The American Legion


ATTORNEY FOR THE BOARD

D. Havivi, Associate Counsel


INTRODUCTION

The Veteran had active service from March 1985 until August 1992. Given that the medical evidence shows that the Veteran has been in a persistent vegetative state since December 2012, he has been declared incompetent, a fiduciary has been appointed, and she is serving as the appellant. 

In an August 2002 administrative decision VA found that the character of the Veteran's discharge was not a bar to VA benefits. 

These matters originally come before the Board of Veterans' Appeals (Board) from October 2002, June 2005, January 2009 and February 2013 rating decisions of the Department of Veterans Affairs (VA) Regional Office (RO) in Albuquerque, New Mexico. 

In August 2004, the Board granted entitlement to a 10 percent rating for the Veteran's finger disability. The issues of entitlement to service connection for lung and neck disabilities were remanded. In August 2005, the United States Court of Appeals for Veterans' Claims (Court) remanded the case for reconsideration by the Board. 

In May 2011, the Board denied entitlement to service connection for neck, lung and migraine disabilities and remanded the claims of e to increased ratings for back and finger disabilities. In February 2012, the Court remanded for clarification of whether the Veteran wanted a hearing before a Veterans Law Judge. 

In August 2012, the Board returned the case to the RO for clarification. The Veteran waived a hearing in a November 2012 statement and the case has now properly returned to the Board. 

A review of the Veterans Benefits Management System and Virtual VA paperless claims processing system reveals additional records which are pertinent to the present appeal. Ratings decisions, VA outpatient treatment records, the June 2014 Appellant Brief and fiduciary documents are located in Virtual VA. 


FINDINGS OF FACT

1. The Veteran's statements that he currently has neck/upper back, migraine headache, and right lung disabilities due to service are not competent. 

2. The March 2005 conclusion by a VA examiner, based on physical examination and a review of the claims files, that the Veteran does not have a right lung disability due to service is competent, credible, and highly probative evidence. 

3. The Veteran does not currently have a neck/upper back disability that is causally related to service. 

4. The Veteran does not currently have migraine headaches that are causally related to service. 

5. The Veteran does not currently have a right lung disability that is causally related to service. 

6. The Veteran's residuals of a T-11 compression fracture are not manifested by forward thoracolumbar flexion less than 61 degrees, a combined range of thoracolumbar motion less than 121 degrees, or by muscle spasm or guarding severe enough to result in an abnormal gait or abnormal spinal contour such as scoliosis, reversed lordosis, or abnormal kyphosis. 

7. Residuals of a right fifth metacarpal (little finger) fracture are not manifested by disability that equates to an amputation of that finger with metacarpal resection.


CONCLUSIONS OF LAW

1. A neck/upper back disability was not incurred or aggravated in-service. 38 U.S.C.A. §§ 1110, 1131, 5103, 5103A, 5107 (West 2002 and Supp. 2013); 38 C.F.R. §§ 3.102, 3.159, 3.303 (2013). 

2. Migraine headaches were not incurred in or aggravated by service. 38 U.S.C.A. §§ 1110, 1131, 5103, 5103A, 5107; 38 C.F.R. §§ 3.159, 3.303. 

3. A right lung disorder was not incurred or aggravated by service. 38 U.S.C.A. §§ 1110, 1131, 5103, 5103A, 5107; 38 C.F.R. §§ 3.159, 3.303. 

4. The criteria for an initial evaluation in excess of 10 percent for residuals of a T11 compression fracture have not been met. 38 U.S.C.A. §§ 1155, 5100, 5103, 5103A, 5107 (West 2002); 38 C.F.R. §§ 3.102, 3.159, 3.321, 3.326, 4.1-4.7, 4.10, 4.71a, Diagnostic Code 5235 (2013). 

5. The criteria for an initial evaluation in excess of 10 percent for residuals of a right fifth metacarpal fracture have not been met. 38 U.S.C.A. §§ 1155, 5100, 5103, 5103A, 5107 (West 2002); 38 C.F.R. §§ 3.102, 3.159, 3.321, 3.326, 4.1-4.7, 4.10, 4.71a, Diagnostic Codes 5003, 5010, 5227, 5230 (2013). 


REASONS AND BASES FOR FINDINGS AND CONCLUSIONS

In regard to the claims for service connection, the requirements of the Veterans Claims Assistance Act of 2000 have been met. There is no issue as to providing an appropriate application form or completeness of the application. VA notified the Veteran in correspondence dated in January 2002, August 2004, January 2005, and March 2006 of the information and evidence needed to substantiate and complete a claim of entitlement to service connection, to include notice of what part of that evidence is to be provided by the claimant and what part VA will attempt to obtain. The Veteran was also notified how disability evaluations and effective dates are assigned.

The increased rating claims arise from a disagreement with the initial disability rating that was assigned following the grant of service connection. The Court has held that once service connection is granted the claim is substantiated, additional notice is not required and any defect in the notice is not prejudicial. Hartman v. Nicholson, 483 F.3d 1311 (Fed. Cir. 2007).

The VCAA requires VA to make reasonable efforts to assist the claimant in obtaining evidence necessary to substantiate the claim for the benefit sought, unless no reasonable possibility exists that such assistance would aid in substantiating the claim. 38 U.S.C.A. § 5103A; 38 C.F.R. § 3.159. The record reflects that all pertinent available service treatment records and all other available post-service evidence identified by the Veteran have been obtained. The Veteran's written statements are also of record. Neither the Veteran nor his representative has identified any outstanding evidence that could be obtained to substantiate the claim.

To the extent required by law the Veteran has been provided appropriate medical examinations. Although no nexus opinion has been obtained on the issue of service connection for migraine headaches, none is needed. Such development is necessary if the information and evidence of record does not contain sufficient competent medical evidence to decide the claim, but contains competent evidence of diagnosed disability or symptoms of disability; establishes that the Veteran experienced an event, injury or disease in service, or has a presumptive disease during the pertinent presumptive period; and indicates that the claimed disability may be associated with the in-service event, injury, or disease, or with another service-connected disability. 38 C.F.R. § 3.159(c)(4). Because not all of these conditions have been met, as will be discussed below, a VA examination is not necessary. 

The Board acknowledges the age of latest examinations for increased ratings, however, given the fact that the Veteran now lies in a persistent vegetative state the Board finds that new and accurate examinations are not possible, and that the ratings assigned must be based on the evidence of record. 38 C.F.R. § 3.655 (2013).

The Board concludes that all available evidence that is pertinent to the claims decided has been obtained and that there is sufficient medical evidence on file on which to make a decision on the claims. The Veteran has been given ample opportunity to present evidence and argument in support of his claims. The Board additionally finds that general due process considerations have been complied with by VA. See 38 C.F.R. § 3.103 (2013). 

Service Connection Claims 

Law and Regulations 

The Veteran seeks entitlement to service connection for a neck/upper back disability, migraine headaches, and a right lung disorder. It is contended that the Veteran currently has a neck/upper back disorder, migraines, and a right lung disability due to service. Because the post-service evidence does not show a neck/upper back disability or migraine headaches and there is a March 2005 nexus opinion against the claim for a right lung disorder, the preponderance of the evidence is against these claims and these appeals will be denied. 

Service connection may be granted for disability or injury incurred in or aggravated by active military service. 38 U.S.C.A. §§ 1110, 1131; 38 C.F.R. § 3.303(a). Service connection may also be granted for disability shown after service, when all of the evidence, including that pertinent to service, shows that it was incurred in service. 38 C.F.R. § 3.303(d); Cosman v. Principi, 3 Vet. App. 303, 305 (1992). 

In order to establish service connection for the claimed disorder, there must be (1) medical evidence of a current disability; (2) medical, or in certain circumstances, lay evidence of in-service incurrence or aggravation of a disease or injury; and (3) medical evidence of a nexus between the claimed in-service disease or injury and the current disability. See Hickson v. West, 12 Vet. App. 247, 253 (1999). 

When there is an approximate balance of positive and negative evidence regarding the merits of an issue material to the determination of the matter, the benefit of the doubt in resolving each such issue shall be given to the claimant. 38 U.S.C.A. § 5107(b); Gilbert v. Derwinski, 1 Vet. App. 49 (1990); 38 C.F.R. § 3.102. 

The Board must determine the value of all evidence submitted, including lay and medical evidence. Buchanan v. Nicholson, 451 F.3d 1331 (Fed. Cir. 2006). The evaluation of evidence generally involves a three-step inquiry. First, the Board must determine whether the evidence comes from a "competent" source. The Board must then determine if the evidence is credible, or worthy of belief. Barr v. Nicholson, 21 Vet. App. 303 at 308 (2007) (Observing that once evidence is determined to be competent, the Board must determine whether such evidence is also credible). The third step of this inquiry requires the Board to weigh the probative value of the proffered evidence in light of the entirety of the record. 

Competent lay evidence means any evidence not requiring that the proponent have specialized education, training, or experience. Lay evidence is competent if it is provided by a person who has knowledge of facts or circumstances and conveys matters that can be observed and described by a lay person. 38 C.F.R. § 3.159. Lay evidence may be competent and sufficient to establish a diagnosis of a condition when: (1) a layperson is competent to identify the medical condition (i.e., when the layperson will be competent to identify the condition where the condition is simple, for example a broken leg, and sometimes not, for example, a form of cancer); (2) the layperson is reporting a contemporaneous medical diagnosis, or; (3) lay testimony describing symptoms at the time supports a later diagnosis by a medical professional. Jandreau v. Nicholson, 492 F. 3d 1372 (Fed. Cir. 2007). 

In ascertaining the competency of lay evidence, the Court has generally held that a layperson is not capable of opining on matters requiring medical knowledge. Routen v. Brown, 10 Vet. App. 183 (1997). In certain instances, however, lay evidence has been found to be competent with regard to a disease with unique and readily identifiable features that are capable of lay observation. See, e.g., Barr v. Nicholson, 21 Vet. App. 303 (2007) (concerning varicose veins); see also Jandreau. Laypersons have also been found to not be competent to provide evidence in more complex medical situations. See, e.g., Woehlaert v. Nicholson, 21 Vet. App. 456 (2007) (concerning rheumatic fever). 

Competent medical evidence is evidence provided by a person who is qualified through education, training, or experience to offer medical diagnoses, statements, or opinions. Competent medical evidence may also include statements conveying sound medical principles found in medical treatises. It also includes statements contained in authoritative writings, such as medical and scientific articles and research reports or analyses. 38 C.F.R. § 3.159(a)(1). After determining the competency and credibility of evidence, the Board must then weigh its probative value. In this function, the Board may properly consider internal inconsistency, facial plausibility, and consistency with other evidence submitted on behalf of the claimant. Madden v. Brown, 125 F.3d 1447 (Fed Cir. 1997) (the Board has the "authority to discount the weight and probative value of evidence in light of its inherent characteristics in its relationship to other items of evidence"). 

While the Veteran is competent to report complaints of joint pain, he is not competent to diagnose the disorder, or report that he has arthritis due to service. Laypersons are not competent to provide evidence in complex medical situations. Woehlaert v. Nicholson, 21 Vet. App. 456 (2007). Instead, competent medical evidence is required. Such evidence is that provided by a person who is qualified through education, training, or experience to offer medical diagnoses, statements, or opinions. Competent medical evidence may also include statements conveying sound medical principles found in medical treatises. It also includes statements contained in authoritative writings, such as medical and scientific articles and research reports or analyses. 38 C.F.R. § 3.159(a)(1). 

Generally, the degree of probative value which may be attributed to a medical opinion issued by a VA or private treatment provider is weighed by such factors as its thoroughness and degree of detail, and whether there was review of the Veteran's claims file. Prejean v. West, 13 Vet. App. 444 (2000). Also significant is whether the examining medical provider had a sufficiently clear and well-reasoned rationale, as well as a basis in objective supporting clinical data. Bloom v. West, 12 Vet. App. 185 (1999). The Court has held that a bare conclusion, even one reached by a health care professional, is not probative without a factual predicate in the record. Miller v. West, 11 Vet. App. 345 (1998). In order for a medical opinion to be probative, the medical examiner must have correct information regarding the relevant facts of the case. Nieves-Rodriguez v. Peake, 22 Vet. App. 295 (2008)

Analysis 

Neck/upper back disability 

The Veteran's service treatment records reveal complaints of mid-back pain and upper back numbness in February 1991. In a May 1991 medical history report it was noted that the Veteran had pain in the upper spine secondary to bad posture. His neck and spine were noted to be normal on medical evaluation in May 1991. 

X-rays of the neck in November 1999 were reported to be normal. 

At a March 2003 spine examination, which included a review of the claims files, it was noted that cervical x-rays showed possible slight straightening of the normal lordotic curve. The Veteran spine appeared to be straight with the exception of a slight kyphosis in the mid-back area. The Veteran complained of neck pain with full flexion and extension. There was some loss of flexion of the neck to either side. The diagnosis was history of mid-back pain. 

Following a March 2005 VA spine examination the VA examiner opined that the Veteran had a compression fracture of T-11 secondary to remote trauma, most likely while on active duty, and that he had chronic back strain since service. A June 2005 rating decision granted entitlement to service connection for residuals of a T11 compression fracture, claimed as an upper back injury of the thoracic spine, and assigned a 10 percent rating effective October 11, 2000. 

Significantly, the Veteran's service treatment records do not reveal any chronic neck/upper back disorder in service, including on medical evaluation in May 1991. Although x-rays of the neck in March 2003 showed a possible slight straightening of the normal lordotic curve, there is no objective medical evidence of a neck/upper back disability and none was diagnosed on VA evaluations of the spine in March 2003 and March 2005. The examiner was directed in the August 2004 Board remand to determine whether any current back disorder was related to service, and the only disorder found involved the mid back. Consequently, service connection for a neck/upper back disability is denied. 

The Board has considered the written statements by and on behalf of the Veteran in support of his claim. While the Veteran is competent to report his symptoms he is not competent to provide an opinion on whether he has a neck/upper back disability due to service. Jandreau. Consequently, entitlement to service connection for a neck/upper back disability is denied. 

Migraine headaches 

The Veteran's service treatment records, including his May 1991 medical history and medical examination reports, do not contain any complaints or findings of migraine headaches. In a May 1991 medical history report the Veteran specifically denied that he had, and that he had not had, frequent or severe headaches. 

The Veteran complained of headaches due to injuries in a January 2002 statement. New Mexico Corrections Department records reveal complaints of headaches in reports dated in 2007 and 2008. The Veteran stated in June, October, and November 2007 that he had severe migraine headaches due to exposure to sunlight while working. In September 2008 he reported migraine headaches from head and left eye injuries. 

Given that the initial evidence of a chronic headache disorder was not until many years after service discharge; given that the Veteran indicated that his 2007 and 2008 headaches were due to post-service sun exposure or nonservice-connected injuries; and given that there is no nexus opinion in favor of the claim, the preponderance of the most probative evidence is found to be against the claim. Hence, entitlement to service connection for migraine headaches is denied. 

Right lung disorder 

A review of the service treatment records shows that in March 1987 the Veteran suffered a spontaneous right pneumothorax following the insertion of a chest tube. He complained of shortness of breath in September 1988, but chest x-rays did not show any significant abnormality. The Veteran complained in March 1991 of a right lung problem, and the assessment was pleuritic pain. The Veteran's complaints on his May 1991 medical history report include chest pain. Physical examination revealed a normal chest, normal lungs, and x-rays studies revealed normal findings. 

At a March 2003 VA respiratory evaluation the Veteran complained of intermittent shortness of breath and deep pain in the right upper lung. Physical examination revealed clear lung fields with no sign of respiratory distress, including restrictive disease or dyspnea. A chest x-ray was normal. The diagnoses were patient history of intermittent shortness of breath and right upper chest pain, and status post treatment of right pneumothorax with apparent complete recovery. Although there is a notation in this examination report that the Veteran said that he had not had any periods of respiratory incapacitation, he subsequently wrote on a copy of this report that this notation was not true. 

Pulmonary function studies in March 2003 were reported to show mild obstruction. The results of March 2005 pulmonary function studies were considered inadequate and could not be interpreted. 

Following a March 2005 VA evaluation, which included review of the claims files, the Veteran was noted to have had treatment for a spontaneous right pneumothorax while on active duty with recovery of lung function and mild chronic obstructive pulmonary disease. The examiner concluded that it was less likely than not that the in-service pneumothorax was related to the post-service development of mild pulmonary obstruction. The examiner based this conclusion on the fact that a chest x-ray did not show adhesions, fluid, or incomplete expansion of the lung. The examiner opined that if the Veteran had had adhesions or an incomplete expansion of the lung due to his pneumothorax, it would be expected that he would have a restrictive lung disease rather than the mild obstructive disease found on pulmonary function testing. 

New Mexico Corrections Department treatment records for February 2008 reveal an assessment of bronchitis. 

Although there is evidence of a right lung pneumothorax in service, this disability was considered acute, rather than chronic, because no residuals indicative of restrictive lung disease was found on service examination in May 1991 or on subsequent post-service evaluations. The initial post-service respiratory complaints are not until a number of years after discharge, and it was concluded in the March 2005 nexus opinion that the Veteran's symptoms of mild obstructive disease were not indicative of residuals of a pneumothorax. Consequently, entitlement to service connection for a right lung disorder is denied. 

The Board has considered the written statements by and on behalf of the Veteran in support of his claim. While he has contended that his right lung disorder is due to service, and while he can report his respiratory symptoms, the Veteran is not competent to provide an opinion on whether he has a current right lung disorder due to service. Consequently, entitlement to service connection for a right lung disorder must be denied. 

With respect to each of the foregoing claims of entitlement to service connection because the preponderance of the evidence is against the claims, the doctrine of reasonable doubt is not for application. Gilbert v. Derwinski, 1 Vet. App. 49 (1990). 

Increased ratings claims

Disability evaluations are determined by evaluating the extent to which a Veteran's service-connected disability adversely affects his ability to function under the ordinary conditions of daily life, including employment, by comparing his symptomatology with the criteria set forth in the Schedule for Rating Disabilities (Schedule). 38 U.S.C.A. § 1155; 38 C.F.R. § 4.1. Separate diagnostic codes identify various disabilities and the criteria for specific ratings. Pertinent regulations do not require that all cases show all findings specified by the Schedule, but that findings sufficient to identify the disease and the resulting disability and above all, coordination of the rating with impairment of function will be expected in all cases. 38 C.F.R. §§ 4.7 and 4.21. 

If two disability evaluations are potentially applicable, the higher evaluation will be assigned if the disability picture more nearly approximates the criteria required for that evaluation. Otherwise, the lower rating will be assigned. 38 C.F.R. § 4.7. After careful consideration of the evidence, any reasonable doubt remaining will be resolved in favor of the Veteran. 38 C.F.R. § 4.3. 

Further, the Board must consider whether a higher evaluation of a service-connected disability is warranted on the basis of functional loss due to pain, or due to weakness, fatigability, incoordination or pain on movement of a joint under 38 C.F.R. §§ 4.40 and 4.45. See generally, DeLuca v. Brown, 8 Vet. App. 202 (1995). In Mitchell v. Shinseki, 25 Vet. App. 32 (2011) the Court distinguished DeLuca, saying that pain alone through a joint's range of motion does not constitute functional loss. The Court has clearly indicated that painful motion does not equate to limited motion. Mitchell, 25 Vet. App. at 41. 

Evidence to be considered in the appeal of an initial assignment of a disability rating is not limited to that reflecting the then-current severity of the disorder. Fenderson v. West, 12 Vet. App. 119 (1999). In cases where an initially assigned disability evaluation has been disagreed with, it is possible for a veteran to receive a staged rating. That is, it is possible to be awarded separate percentage evaluations for separate periods, based on the facts found during the appeal period. Id. at 126-28; 

Residuals of a T-11 compression fracture 

The Veteran seeks an higher initial rating for residuals of a T-11 compression fracture. 

Under the General Rating Formula for Rating Diseases and Injuries of the Spine, with or without symptoms such as pain (whether or not it radiates), stiffness or aching in the area of the spine affected by residuals of injury or disease, the following ratings will apply. The Veteran's current 10 percent evaluation is warranted if forward flexion of the thoracolumbar spine is greater than 60 degrees but not greater than 85 degrees; or, forward flexion of the cervical spine is greater than 30 degrees but not greater than 40 degrees; or, combined range of motion of the thoracolumbar spine is greater than 120 degrees but not greater than 235 degrees; or, combined range of motion of the cervical spine is greater than 170 degrees but not greater than 335 degrees; or, muscle spasm, guarding, or localized tenderness not resulting in abnormal gait or abnormal spinal contour; or, vertebral body fracture with loss of 50 percent or more of the height. 38 C.F.R. § 4.71a, Diagnostic Codes 5235. 

A 20 percent evaluation is warranted if forward thoracolumbar flexion is less than 61 degrees; or if the combined range of thoracolumbar motion is less than 121 degrees; or if there is muscle spasm or guarding severe enough to result in an abnormal gait or abnormal spinal contour such as scoliosis, reversed lordosis, or abnormal kyphosis. Id. 

There are several notes set out after the diagnostic criteria, with the following applying to the instant case: For purposes of VA compensation, normal forward thoracolumbar flexion is from 0 to 90 degrees, and extension, bilateral lateral flexion, and bilateral lateral rotation is from 0 to 30 degrees. The combined range of motion refers to the sum of the range of forward flexion, extension, left and right lateral flexion, and left and right rotation. The normal combined range of motion of thoracolumbar spine is to 240 degrees. 

Also, Note 1 after the General Rating Formula states that one should also evaluate any associated objective neurological abnormalities, including but not limited to bladder impairment, separately, under the appropriate diagnostic code. Id. 
 
At a March 2003 VA examination the Veteran reported continuous low grade mid to lower back pain, with intermittent sharp pain. The Veteran denied any neurological symptoms such as numbness, weakness, bowel problems or erectile dysfunction. The Veteran was able to walk despite being in wrist and ankle cuffs and was able to take care of his routine daily needs. The examiner noted a slight kyphosis in the mid back area, but there was no scoliosis and the back was symmetrical. The Veteran's lumbosacral spine measurements were forward flexion to 90 degrees, extension to 20 degrees and lateral flexion to 35 degrees in each direction. The Veteran reported some pain on motion, but there was minimal limitation of motion, no muscle spasm, and no weakness or tenderness. There was also no postural abnormality. The examiner noted some diminished sensation in the right hand, but attributed this to previous right hand surgery, not the back disability. 

A May 2004 addendum noted x-rays were normal except the kyphosis. There was no sign of trauma or old fractures. The examiner diagnosed back pain and kyphosis. 

The Veteran was seen several times by the New Mexico Corrections Department clinicians. For example, in November 2002, he was noted to have severe back pain, but he ambulated without difficulty, had no gross deformity and was able to bend at the waist. 

The examiner gave an addendum opinion in March 2005, noting that the Veteran had x-ray evidence of a possible old compression fracture of T-11. The examiner further said there was minimal limitation of motion and no degenerative joint disease visible on the x-ray. 

In December 2007, imagery showed the spine to have normal kyphosis without measureable scoliosis, mild disc space narrowing and marginal spur formation without fracture or subluxation. 

In a November 2008 New Mexico Corrections Department note, the Veteran reported that it was sometimes hard to turn his head left, and that it felt like a guitar string pulling. The examiner stated that despite complaints of pain, the Veteran had previously been able to rotate his neck and low back and flex his spine. The examiner stated that the back pain was helped by physical therapy and medication, and that the criteria for the Veteran to obtain a bottom bunk were not met. 

Following an August 2011 VA examination the examiner diagnosed a compression fracture of the spine and thoracic spine pain. The Veteran reported flareups due to movement that could be temporarily alleviated by medication. The Veteran reported that his pain was constant and that it affected his ability to stand for long periods of time. Physical examination revealed that thoracolumbar forward flexion, extension, bilateral flexion and bilateral rotation were all full. The Veteran had painful motion beginning at 25 degrees in extension and 25 degrees in left lateral rotation. The Veteran was able to demonstrate a full range of motion in each plane after repetitions. The Veteran did have some pain on motion, as well as some mid thoracic area pain to percussion and palpitation. There was no guarding or muscle spasm. He showed full muscle strength and there was no muscle atrophy. Reflexes were good. A sensory examination revealed normal findings save for decreased sensation to light touch in the left upper anterior thigh. The examiner stated, however, that this was consistent with meralgia paresthetica and was unrelated to the service-connected condition. Straight leg testing was negative and there were no radicular symptoms, neurological abnormalities or intervertebral disc syndrome. The imaging showed no arthritis, but did show increased thoracic kyphosis. 

The Veteran's residuals of a T-11 compression fracture do not meet the criteria for an evaluation in excess of 10 percent. There is no evidence that either forward thoracolumbar flexion has been less than 61 degrees, or that the combined range of thoracolumbar motion has been less than 121 degrees. There is objective evidence of pain, but no muscle spasm or guarding. There is some kyphosis, but no measureable scoliosis. There is no evidence of associated service connected neurological abnormalities. There was decreased sensation to light touch in the left upper anterior thigh, but the examiner stated that this was consistent with an unrelated non service-connected disorder. There is no evidence of arthritis. 

Given the foregoing, the benefit sought on appeal is denied. 

Residuals of a right fifth finger fracture

The Veteran seeks entitlement to an increased initial rating for residuals of a right little finger fracture. VA granted entitlement to service connection and a noncompensable rating in October 2002. The Board increased this rating to 10 percent in an August 2004 decision, effective the date of service connection. 

Arthritis due to trauma, and substantiated by x-ray findings, is to be rated as degenerative arthritis. 38 C.F.R. § 4.71a, Diagnostic Code 5010. 

Degenerative arthritis (hypertrophic or osteoarthritis) established by x-ray findings will be rated on the basis of limitation of motion under the appropriate diagnostic codes for the specific joint or joints involved. When however, the limitation of motion of the specific joint or joints involved is noncompensable under the appropriate diagnostic codes, a rating of 10 percent is for application for each such major joint or group of minor joints affected by limitation of motion, to be combined, not added under diagnostic code 5003. Limitation of motion must be objectively confirmed by findings such as swelling, muscle spasm, or satisfactory evidence of painful motion. Id. at Diagnostic Code 5003. 

Under limitation of motion of individual digits, any limitation of motion of the little finger will be rated as noncompensable. 38 C.F.R. § 4.71a, Diagnostic Code 5230. 

Under 38 C.F.R. § 4.71a, Diagnostic Code 5156, a 10 percent rating is assigned for an amputation of the little finger on either the major or minor hand, without metacarpal resection, at the proximal interphalangeal joint or proximal thereto. This Diagnostic Code offers higher ratings for a more severe amputation, however, the Veteran does not suffer from residuals of an amputated right little finger. Hence, further discussion of this Diagnostic Code is not necessary. 

At a March 2003 VA examination the Veteran reported intermittent right hand pain, primarily in his second and third fingers. The Veteran was able to touch his thumb to his fingers without difficulty and his third fourth and fifth fingers to the crease in the median transverse fold in his palm with extra force. His right hand had a weaker grip than the left, but he could still pick up small objects and write his name legibly. The fingers had a full range of motion with the exception of the second finger. X-rays showed a healed fracture of the fifth metacarpal with no significant shortening, but associated degenerative change to the joint. The examiner diagnosed a status post fracture of the fifth metacarpal with open reduction internal fixations, good healing and hypesthesia (diminished capacity for sensation). 

Records from the New Mexico Department of Corrections note the remote injury, but do not add additional symptoms. A June 2008 image showed the finger to be internally fixated and the fracture healed, but otherwise normal. 

In October 1993, the Veteran had surgery to fix his right fifth metacarpal after he reinjured it in a fall. Imagery following the surgery showed a metal plate secured to the bone in good position and alignment. 

At an August 2011 VA examination the examiner diagnosed a fracture of metacarpal bones and joint pain. The Veteran is right-handed and reports flare-ups with repetitive gripping activities. He also reported having a weak grip, that his ring and little fingers were numb, and swelling during flares. His flares reportedly limited his ability to do work that requires gripping or grasping. He also has increased pain when writing or typing. 

Physical examination revealed that the Veteran had a limitation of right ring and little finger motion, but there was no gap between the thumb pad and the fingers. There was no objective evidence of painful motion when touching the thumb pad. There was a gap of less than an inch between the ring and little fingers and the proximal transverse crease of the palm and painful motion in each finger at the extreme of this motion. Finger extension was full without pain. The Veteran was able to repeat the ranges of motion without further limitation. The Veteran had some functional loss in the fingers that was manifested by less movement than normal, weakened movement, excess fatigability and pain on movement. The Veteran showed some tenderness or pain to palpitation to the soft tissue of the right hand. His grip strength was 4 out of 5. There was no ankylosis. There was a scar, but it was less than nine square inches, it was stable and not painful. The Veteran occasionally used a finger brace. Functioning is not so diminished that amputation with prosthesis would equally serve. Imaging shows no arthritis, but evidence of a prior fracture with complete healing. The examiner commented that the fourth (ring) metacarpal and other structures of the hand and wrist appeared normal in the imaging. 

The criteria for a rating in excess of 10 percent have not been met. In this regard, while Diagnostic Codes 5227 and 5230 pertain to the little finger, they do not provide a scheduler basis for an increased rating. Rather, the only available code that does, Diagnostic Code 5156, requires evidence of an amputation which is not shown or approximated. Hence, there is no basis for an increased rating.

Staged ratings are inapplicable in the instant case because there is no evidence of a worsening in the Veteran's disabilities for the time period at issue. Fenderson v. West, 12 Vet. App. 119 (1999). 

In reaching the decisions to deny higher initial ratings the Board considered the doctrine of reasonable doubt, however, as the preponderance of the evidence is against the Veteran's claims, the doctrine is not for application. Gilbert.

The Board considered whether the Veteran's disabilities warrant referral for extra-scheduler consideration. In exceptional cases where scheduler disability ratings are found to be inadequate, consideration of an extra-scheduler disability rating is made. 38 C.F.R. § 3.321(b)(1). There is a three-step analysis for determining whether an extra-schedular disability rating is appropriate. See Thun v. Peake, 22 Vet. App. 111 (2008). First, there must be a comparison between the level of severity and symptomatology of the Veteran's service-connected disability and the established criteria found in the rating schedule to determine whether the Veteran's disability picture is adequately contemplated by the rating schedule. Id. If not, the second step is to determine whether the claimant's exceptional disability picture exhibits other related factors identified in the regulations as "governing norms." Id.; see also 38 C.F.R. § 3.321(b)(1) (governing norms include marked interference with employment and frequent periods of hospitalization). If the factors of step two are found to exist, the third step is to refer the case to the Under Secretary for Benefits or the Director of the Compensation and Pension Service for a determination concerning whether, to accord justice, the claimant's disability picture requires the assignment of an extraschedular rating. Id. 

In this case, the Veteran's symptoms are expressly contemplated by the rating schedule. As outlined above, the Veteran has some back pain on motion and kyphosis. The Veteran's right little finger has some functional loss in the form of a limited range of motion, arthritis and pain. Such symptoms are contemplated by the schedular criteria set forth in 38 C.F.R. § 4.71a. The regulations and case law expressly consider each of these symptoms. As the scheduler criteria contemplate all of the Veteran's symptoms the first step of Thun has not been met, and referral for the assignment of an extraschedular disability rating is not warranted. 


ORDER

Entitlement to service connection for a neck/upper back disability is denied. 

Entitlement to service connection for migraine headaches is denied. 

Entitlement to service connection for a right lung disorder is denied. 

Entitlement to an increased initial rating in excess of 10 percent for residuals of a T11 compression fracture is denied. 



Entitlement to an increased initial rating in excess of 10 percent for residuals of a right fifth finger fracture is denied. 




____________________________________________
DEREK R. BROWN
Veterans Law Judge, Board of Veterans' Appeals


Department of Veterans Affairs